Derr Flooring Company, Inc. *v.* Whitemarsh Township Zoning Board of Adjustment.

Argued October 5, 1971, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

*Edward Fackenthal,* with him *Henderson, Wetherill, O'Hey & Horsey,* for appellant protestants.

*Frank W. Jenkins,* with him *Jenkins & Acton,* for appellee applicant.

OPINION BY JUDGE KRAMER, December 28, 1971:

This is an appeal from an order of the Court of Common Pleas of Montgomery County reversing an order of the Whitemarsh Township Zoning Hearing Board (Board). The Board had dismissed an appeal by Derr Flooring Company (Derr) for a special exception to construct a building to be used, together with the 13.375 acre tract of land, in the operation of a wholesale hardwood flooring and related businesses. Twelve and three-tenths (12.3) acres of the tract in question are situate in Whitemarsh Township in an area zoned as CLI "Campus-type Limited Industrial." The

remainder of the acreage is not involved in this case. The land is bounded on three sides by highways along land having either the same zoning classification or a lower classification designated "Limited Industrial." The fourth, or northerly side, is bounded by a railroad track of the Reading Railroad, used for both passenger and freight rail traffic. Across the railroad tracks are located the homes of most of the protestants. These homes are situated in an area zoned for residential use, with some of the homes near the railroad tracks.

The record shows that Derr had entered into an agreement to purchase the tract of land from a residential user, conditioned upon Derr receiving governmental authority to construct a building for its business and an adjunct railroad siding. The finding by the Board that Derr is the owner of the realty in question is not relative to the ultimate issues to be determined by this Court. Derr intends to conduct a wholesale distribution business on the property, whereby it will receive large shipments of hardwood flooring, doors, windows, etc., and thereafter sell and distribute same in smaller wholesale lots to contractors and builders. The record indicates that Derr estimates the average arrival of two freight car deliveries per week and the daily operation of about six trucks. Except for the rail freight car operation which is proposed to be screened from the northern view, all of the other operations will be inside the proposed one hundred thousand square feet building (ninety-five thousand of which will be storage and five thousand square feet for office space). There is no manufacture, processing or millwork involved in Derr's operations. Due to the delivery scheduling by Reading Railroad, the train siding delivery operations were proposed to take place between 10:00 p.m. and 11:30 p.m. two evenings per week.

In 1969, at the suggestion of the zoning officials of the township, Derr made application for a special ex-

ception which upon appeal to the Board was denied for the reason that the intended use was specifically excluded by the ordinance then in effect. Derr took no appeal to the court from that determination. The pertinent part of that 1969 ordinance reads as follows: "5. Any use of the same general character as any of the above-permitted uses when authorized as a special exception by the Board of Adjustment, provided that such use shall be subject to such reasonable restrictions as the Board of Adjustment may determine, and further provided that no use shall be permitted which may be noxious or hazardous and provided further that no exterior storage of materials or equipment shall be permitted, except temporary storage which is not noxious or offensive by reason of odor, dust, fumes, smoke, gas, vibration, noise, or risk of fire or explosion and provided that such temporary storage shall not continue for periods of more than seventy-two (72) hours at any one time and provided further that said temporary storage shall be fully concealed by fencing or landscaping, and shall be within an area which could be utilized for building on the lot."

On March 17, 1970, the Board of Supervisors of Whitemarsh Township amended the zoning ordinance so that this same section just quoted reads as follows:

"33-1601

". . . E. Any use of the same general character as any of the above, including storage and distribution of products, but excluding use as a truck terminal or general public warehouse, when such use is authorized as a special exception by the Zoning Hearing Board, and provided that

"1. such use shall be subject to such reasonable restrictions as the Zoning Hearing Board may determine;

"2. no use shall be permitted which may be noxious or hazardous;

"3. no exterior storage of materials or equipment shall be permitted, except temporary storage which is not noxious or offensive by reason of odor, dust, fumes, smoke, gas, vibration, noise or risk of fire or explosion and provided that such temporary storage shall not continue for periods more than seventy-two (72) hours at any one time; and

"4. provided further that said temporary storage shall be fully concealed by fencing or landscaping, and shall be within the area which could be utilized for building on the lot."

At the hearing on May 26, 1970, before the Board in this case, one of the township supervisors read into the record a recommendation* of the Board of Supervisors of Whitemarsh Township relating to the amended ordinance. Although this recommendation of the Township Supervisors had no significant or binding effect whatsoever on whether or not Derr's request comes within the purview of the zoning ordinance as amended, it could be used as evidence having a bearing on the Board of Supervisors' intent in the passing of the zoning amendment. Clearly, however, it is the Zoning Board which has the power to interpret the meaning of the zoning ordinance as it applies to the facts presented to it (53 P.S. 10909); and the Board can only be reversed

* R. 104-105: "I am Mr. Richard Lownes. I would like to read the recommendations of the Board of Supervisors.

"The Whitemarsh Township Board of Supervisors hereby reaffirms its recommendation for the approval of the Derr Flooring Company request for special exception as previously submitted on October 21, 1969—I think you have a copy of this.

"It is the Board's opinion that the proposed use meets the specific provisions of Section 33-1601 'E' of the Whitemarsh Township Code. It is their recommendation that it be permitted subject to the provisions of an enclosure or screening of the railroad as necessary to protect properties on Fairwold Lane and Pennsylvania Avenue. Such conditions would be in addition to the procedural requirements of Section 33-1607 of the Whitemarsh Township Code."

if it makes an error of law in its interpretation of the amended ordinance.

Inasmuch as the lower court did not receive any new or additional testimony, our scope of review is directed to whether the Board abused its discretion or committed an error of law. *Marple Township Appeal,* 440 Pa. 508, 269 A. 2d 699 (1970).

Appellants argue (1) that the Board properly interpreted the legislative intent of the Township Supervisors in that the amended ordinance does not include the intended use of Derr within the CLI zoning classification and (2) that the court had no power to impose conditions and restrictions to a special exception in its order but rather should have remanded the matter back to the Board.

Appellants further argue that the amendatory language of section (E) (set forth above) of the 1970 ordinance merely refers the reader back to a prior subsection and therefore did not include the proposed Derr use. If we follow that reasoning we would then be forced to ignore the words ". . . but excluding use as a truck terminal or general public warehouse. . . ." These words indicate the type of storage and distribution use intended to be excluded by the ordinance. It is clear to us that the Township Supervisors intended to include the "storage and distribution of products" such as is proposed by Derr, when permitted as a special exception. We are aided in this determination by the application of Section 51 of the Statutory Construction Act, Act of May 28, 1937, P. L. 1019, Art. IV, 46 P.S. 551, which directs us to resolve any ambiguity by ascertaining the intent of the legislative body. This record clearly shows the intent of the Township Supervisors to amend the zoning ordinance so as to include the use proposed by Derr. On the issue of whether the Derr application and proposed use come within the intent of

the zoning ordinance amendment, we hold that they do and affirm the court below.

Appellants next argue that Derr has not met its burden of proof required by the ordinance. The 1970 amended ordinance included a new section which reads as follows:

"33-2304

*"Burden of Proof:* The burden of proof shall always be on the applicant before the Zoning Hearing Board to sustain his appeal before the Zoning Hearing Board and in any application for a special exception, the burden shall be upon the applicant to prove that approval of the application will not be detrimental to the health, safety and general welfare of the community."

The Board concluded that Derr had "failed to prove that the approval of its application will not be detrimental to the health, safety and general welfare of the community." There can be no question that the zoning ordinance may place the burden of proof onto the applicant. See *York Township Zoning Board of Adjustment v. Brown,* 407 Pa. 649, 182 A. 2d 706 (1968). In the case of a special exception the ordinance may set forth all manner of reasonable conditions for the protection of the health, safety and general welfare of the community which the applicant must meet. See *Rubin v. Zoning Board of Adjustment (Philadelphia),* 1 Pa. Commonwealth Ct. 406, 274 A. 2d 208 (1971). This is not to say, however, that the burden is such that the applicant must negate every conceivable and unvoiced objection to the proposed use. That would be an unreasonable burden. Once an applicant has met the burden of proving his compliance with all of the specific conditions and requirements of the zoning ordinance, he has met his initial burden of proof. If the protestants to the issuance of a special exception raise specific issues concerning health, safety and general welfare, then the burden would continue to be with the applicant. The

applicant would be required to come forward to meet the objections so as to show that the intended use would not violate the health, safety and general welfare of the community with relation to such objections. It would then be the duty of the Board in the exercise of its discretionary power to determine whether or not the applicant had met his burden of proof.

The record in this case indicates that Derr presented evidence on all of the conditions required by the ordinance (including the proposed fencing and landscaping to protect the residential property across the railroad tracks). Furthermore, the lower court, by its specific time limitation conditions on usage, has provided, logically from the record, protection to satisfy the community's major objection to the usage. We affirm the lower court in its determination that the Board committed an error of law on the issue of burden of proof.

The only remaining question is whether the lower court had the power to impose time limitation conditions on the special exception use. The court in its order stated:

"1. There shall be no shifting, loading or unloading of railroad cars on the premises between the hours of 11:00 p.m. and 7:00 a.m.

"2. There shall be no loading, unloading or movement of trucks between the hours of 11:00 p.m. and 7:00 a.m.

"3. Between the hours of 11:00 p.m. and 7:00 a.m., any operations on the premises shall be confined to those which can be conducted indoors." Section 1009 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P. L.    , No. 247, Art. X, 53 P.S. 11009, provides, in pertinent part, that on an appeal from a zoning board of adjustment: ". . . The final decision shall contain conclusions of law, and: (1) Where the appeal is from the decision of the board, the court may reverse, affirm or modify the decision appealed." Al-

though the conditions set forth in the Order of the lower court are supported by the record, we are unable to affirm its Order as a modification within the legislative intent of the statute. Inasmuch as the adjudication of the Board was a denial of a special exception, the court could reverse the action of the Board, but it then had nothing before it to modify. We do not interpret the word "modify" in Section 1009, *supra,* to mean that the court could reverse the Board's denial and thereafter impose its own restrictions and conditions upon the special exception. As was indicated in the case of *Limekiln Golf Course, Inc. v. Zoning Board of Adjustment of Horsham Township,* 1 Pa. Commonwealth Ct. 499, 275 A. 2d 896 (1971), it is the local zoning officials who have the knowledge of local circumstances who should establish the conditions to be applied to special exceptions. In view of this analysis, we must remand this matter back to the court below with specific instructions to remand the matter back to the Board, solely for the purpose of establishing reasonable conditions, such as time of operation, fencing, etc., in conformance with this opinion.

In summary, we conclude that the proposed use by Derr as a special exception comes within the legislative intent of the amended zoning ordinance, that Derr has met its burden of proof as required by the zoning ordinance, and to that extent the court below is affirmed. However, with reference to the conditions set forth in the court's order, this matter must be remanded back to the court and through it to the Board, solely for the purpose of establishing reasonable conditions to the granting of a special exception to Derr. We therefore reverse and remand this matter to the court below in conformance with this opinion.