Warminster Area Child Day Care Association, Inc., Appellant *v.* The Upper Southampton Township Zoning Hearing Board, Appellee.

Argued April 5, 1978, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers, Blatt and DiSalle.

*John P. Koopman,* with him *William J. Carlin,* and *Begley, Carlin, Mandio & Popkin,* for appellant.

*Theodore K. Warner, Jr.,* with him *Robert C. Steiger,* for appellee.

OPINION BY JUDGE ROGERS, May 25, 1978:

Warminster Area Child Day Care Association, Inc. (hereinafter called the Center)[1] appeals an order of the Court of Common Pleas of Bucks County affirming a decision of the Upper Southampton Township Zoning Hearing Board (Board) sustaining an order of a zoning officer directing the Center to cease and desist its summer day camp operations.

Since the year 1966, the Center has operated two programs for the protective care of children of working parents. One provides year-round daytime care and supervision for preschool children, ages 3 to 5, and the other provides daytime care for school aged children, ages 6 to 13, during the summer months when the children do not attend school. Until the events of this case, to be described, the programs were conducted at separate locations. In April 1971, the Center acquired a lot containing about 2.6 acres improved with a building, located in the R-1 Residential zoning district of Upper Southampton Township. The Center had received confirmation from a town-

---

[1] The proper name of the corporation is apparently Warminster Area Child Day Care Association, Inc.; the parties refer to it, however, as the Center and we have employed the same reference in this opinion.

ship zoning officer on March 9, 1971 that the operation of a child day care center, which the zoning officer equated with one use of property as a school, was a permitted use in the R-1 zone under Section 400-2 of the then effective Township Zoning Ordinance (hereinafter referred to as old ordinance). In October of 1971, the Center sought and obtained from the Township Zoning Hearing Board a dimensional variance permitting it to construct an addition to its building. In that proceeding the Center described the proposed use of its premises as that of "Nursery School." A building permit for the construction was issued by the township zoning officer on May 2, 1972, stating the use of the premises as "Day Care Center."

On May 9, 1972, before the Center occupied its property, the township enacted a new Zoning Ordinance (hereinafter referred to as new ordinance), with an effective date of May 14, 1972. The new enactment permitted child day care facilities in the R-1 Zone (in which the Center's property was again located) only as a conditional use; that is, a use permitted conditioned upon approval of the township supervisors. The Center began operating its preschool child care program on the subject premises in February of 1973. It decided to move its summer program for the 6 to 13 year olds to the same location in January of 1974 and did so in the summer of that year. This latter program was simply a summer camp conducted outdoors on a portion of the 2.6 acre tract. The program was appropriately called Stars and Stripes Day Camp.

On July 3, 1974, the township zoning officer served the following order on the Center:

Stars and Stripes Day Camp Operation is not a proper use under the Zoning Ordinance of Upper Southampton Township as it is an improper and illegal extension of prior use as

a Nursery Day Care Center. This use if permitted at all would require a petition to the Board of Supervisors for a Conditional Use [pursuant to Section 405(19) of Ordinance No. 119].

Therefore all use of premises for outdoor use for children of ages 6 to 13 years of age, is to *cease at once*, until further ordered by the Board of Supervisors. (Emphasis in original.)

The Center appealed the cease and desist order to the Board which made the following pertinent findings of fact and conclusions of law:

### FINDINGS OF FACT

15. Camp Stars and Stripes had a staff consisting of college students who served as counsellors and youth corps and manpower workers who acted as aides. There was, at most, one certified teacher amongst the staff of Camp Stars and Stripes.

16. Neither Federal, State, or County Governments requires certified teachers for the operation of a program such as Camp Stars and Stripes.

17. Neither the Federal, State, or County Governments provides regulation or guidelines for the operation of a program such as Camp Stars and Stripes.

18. Camp Stars and Stripes uses the grounds at 460 Maple Avenue for various portions of its program. However, it does not use the structure located thereon for its activities, except on infrequent occasions by a small number of the camps children.

. . . .

25. The structure located at 460 Maple Avenue was not renovated, constructed or al-

tered to accommodate Camp Stars and Stripes nor is it used for that purpose.

26. There is no indication that when the appellants purchased the premises in April of 1971, or when they appeared before this Board for a variance in October of 1971 or when they applied for a building permit in March of 1972 that the subject premises would be used other than for a pre-school program.

27. Between 1966 and 1973, although the appellants operated both the pre-school program and the summer camp program, they were never operated at the same location.

28. When the appellants appeared before this Board in 1971 to request a variance the use of the premises was described as a 'Nursery School.'

29. The pre-school program operated by appellants is essentially a nursery school with longer hours in order to meet the needs of the children's working parents.

30. Camp Stars and Stripes as operated by the appellants is essentially a summer day camp.

. . . .

37. Appellants never stated their intention to use the subject premises for a 'summer camp' in their applications for zoning, use or building permits or in their previous application for a variance from this Board.

38. Substantially all of the improvements made to the subject premises were to accommodate the pre-school program.

. . . .

45. Under Section 405(19) of Ordinance No. 119 'Day Nursery, Nursery School, Kindergarten or other agency giving day care to chil-

dren, whether or not conducted as a private, gainful business' require conditional use approval before operation in an R-1 Residential Zone.

46. Under Section 905 of Ordinance No. 119 only the Board of Supervisors of Upper Southampton Township has the power to approve applications for a conditional use.

. . . .

48. Appellants never applied for a zoning use permit or a conditional use for Camp Stars and Stripes.

CONCLUSIONS OF LAW

7. The Zoning Officer properly issued a cease and desist order on July 3, 1974 to the appellant regarding its use of the subject premises for Camp Stars and Stripes.

The court below affirmed the Board without taking additional evidence.

Where, as here, the court below takes no additional evidence, our scope of review is limited to determining whether the Board abused its discretion or committed an error of law. *V.S.H. Realty, Inc. v. Zoning Hearing Board*, 27 Pa. Commonwealth Ct. 32, 365 A.2d 670 (1976).

Section 405 of the new zoning ordinance provides for the following uses to be established in the R-1 Residential district:

(16) Schools, including religious and non-sectarian, denominational, private or public school, not conducted as a private gainful business, subject to the following provisions:

(a) Minimum lot size shall be not less than two (2) acres.

(b) Direct access to an arterial or collector highway shall be available.

(c) Completely detached buildings on the same lot shall be not less than twenty (20) feet from one another.

. . . .

(18) Community center, adult education center, or other similar facility operated by an educational, philanthropic, or religious institution, subject to the following provisions:

(a) The use shall not be conducted as a private gainful business.

(b) No outdoor recreation area shall be located nearer to any lot line than the required front yard depth.

(19) Day nursery, nursery school, kindergarten, or other agency giving day care to children, whether or not conducted as a private, gainful business, subject to the following provisions:

(a) The use shall be conducted in a building compatible with the district.

(b) Outdoor play areas shall be sufficiently screened and sound-insulated so as to protect the neighborhood from noise and other disturbance.

Section 402 of the ordinance permits the uses enumerated in Section 405(16) and (18) as a matter of right and permits those named in Section 405(19) as conditional uses.

The township in this appeal does not challenge the propriety of the Center's preschool child care use but takes the position that Section 405(19) of the new ordinance permits the child care summer camp program as a conditional use only, for which application must be made to the township supervisors. The Center's position is that it may use the property for its

summer day camp operation as a matter of right. The Center does not challenge any of the Board's findings of fact.

The Center first has recourse to Section 404 of the new ordinance which provides that:

> Any use *existing* on the *effective date of this ordinance* which is classified as requiring a conditional use in that district in which the land occupied by the use is located shall be deemed to have been granted a conditional use. . . . (Emphasis added.)

The Center's thesis appears to be that the township gave it permission to use the property for a child day care center before the effective date of the new ordinance; that the permission of the use for a child care center for 3 to 5 year old children included the property's use as summer day camp for the 6 to 13 year old children; that the Center relied upon this permission and, having made expenditures in renovating the building, it acquired vested rights to the use; and that Section 404 of the new ordinance requires that the day camp use be deemed to have been approved a conditional use. The Center's reliance upon Section 404 is misplaced for a number of reasons. First, the Center's child day care use was authorized pursuant to Section 400-2 of the old ordinance as a "school" within the meaning of Section 200-74 of that ordinance. Section 200-74 of the old ordinance defined a "school" as:

> An educational institution either public or private where the course of instruction conforms to requirements of the Department of Education of the Commonwealth of Pennsylvania. This term is not synonymous with such terms as 'Dancing School and Music School'.

The Board's findings of fact Nos. 15, 16 and 17 clearly demonstrate that Camp Stars and Stripes did not

offer any courses of instruction, much less courses conforming to official requirements, and support the Board's further finding that the Center sought and was given permission only for a preschool child day care center similar to a nursery school. Second, the Board's findings of fact Nos. 18 and 25 establish that the renovated building was and is used primarily for the preschool child day care program and not for the summer day camp program. Third, and most importantly, the summer day camp was not in existence in Upper Southampton Township on the effective date of the new ordinance, May 14, 1972; it was not begun there until the summer of 1974.

The Center next says that its summer camp program is permitted as a matter of right by Section 405, subsections (16) and (18) of the new ordinance because this use falls within the broad meaning of the word "schools" used in Section 405(16) or of "educational [or] philanthropic institutions" as used in Section 405(18). This argument is totally without merit. We stated in *Crary Home v. DeFrees*, 16 Pa. Commonwealth Ct. 181, 184-85, 329 A.2d 874, 876-77 (1974) that:

> Whether a proposed use, as factually described in an application or in testimony, falls within a given category specified in a zoning ordinance is a question of law and subject to review on that basis. Merry v. Zoning Board of Adjustment, 406 Pa. 393, 178 A.2d 595 (1962); aff'g., 26 Pa. D. & C. 2d 280 (1961); Swift v. Zoning Hearing Board of Abington Township, Pa. Commonwealth Ct. , 339 A.2d 874 (1974). The issue becomes one of statutory construction, and the function of a reviewing court is to determine the intent of the legislative body which enacted the legislation. Derr Flooring Company, Inc. v. White-

marsh Township Zoning Board of Adjustment, 4 Pa. Commonwealth Ct. 341, 346, 285 A.2d 538, 542 (1972). See Statutory Construction Act of 1972, 1 Pa. C.S. §1921. . . .

A statute (or ordinance) should, when possible, be construed to give effect to all of its provisions, Bethel Township Veterans Home Association Liquor License Case, 180 Pa. Superior Ct. 159, 165, 119 A.2d 613, 616 (1956), and a particular section of a piece of legislation should (absent legislative direction to the contrary) be construed as an integral part of the whole, and not as a separate portion with an independent meaning. Commonwealth of Pennsylvania Water and Power Resources Board v. Green Spring Company, 394 Pa. 1, 6, 145 A. 2d 178, 181 (1958); Olson v. Kucenic, 389 Pa. 506, 509-10, 133 A.2d 596, 598 (1957). See Statutory Construction Act of 1972, 1 Pa. S. §1922 (2).

Section 405(19) of the new Ordinance provides that the use of property as a child day care facility in an R-1 Zone is permitted only when authorized as a conditional use. In order to give effect to the entire Ordinance and at the same time give force to Section 405(19), it is necessary to hold that the generally described uses in Section 405(16) and (18) do not include child day care use. *Compare Crary Home v. DeFrees, supra.*

Order affirmed.

#### ORDER

AND Now, this 25th day of May, 1978, the order of the Court of Common Pleas of Bucks County appealed from herein is affirmed.