Keystone Chemical Company, Inc., Appellant *v.*
The Zoning Hearing Board of Butler Township
and Butler Township, Appellees.

Argued May 7, 1985, before Judges Rogers and Barry and Senior Judge Barbieri, sitting as a panel of three.

*Richard L. Caplan, Schwartzman & Hepps,* for appellant.

Leo Bregnik, with him, Frank J. Toole and Thomas J. Pellish, for appellees.

OPINION BY JUDGE ROGERS, June 19, 1985:

Keystone Chemical Company (Keystone) has appealed from an order of the Court of Common Pleas of Schuylkill County affirming the denial by the Butler Township Zoning Hearing Board (board) of a special exception to operate an industrial waste materials treatment plant.

In 1977, Keystone applied for, and received from the board, a variance permitting it to conduct an oil recycling operation on land located in the zoning district of Butler Township designated Mining. In 1978, the Pennsylvania Department of Environmental Resources (DER) issued a permit authorizing Keystone to operate a "solid waste disposal and/or processing facility"; additionally, the United States Environmental Protection Agency issued a permit allowing Keystone to operate a hazardous waste treatment plant. In 1979, Keystone leased the land from the City of Philadelphia for a term of thirty years.[1] The tract is underlain with abandoned coal mines which lie at least 500 feet below the surface. The surface is supported by a barrier pillar. The tract borders on Shenandoah Creek. Two underground potable water lines serving neighboring residences transverse it. Three public roads provide access to the site.

Also in 1979, the board issued a second variance and a building permit authorizing Keystone to erect and operate an oil processing plant on the leased site. Keystone constructed this facility, including a single, asphalt-lined earthen cell, which it filled with chem-

---

[1] No question seems to have been raised as to Keystone's standing to request a use variance on land which it neither owned nor leased.

ically neutralized wastes. Keystone began operations in 1980.

On May 10, 1982, DER personnel inspected the site and discovered forty-four violations of DER regulations. Keystone later filed an application with DER to amend its permit so that it might replace the asphalt liners, which had become cracked and eroded due to weather exposure, with plastic liners. DER then issued an order on September 1, 1983, ordering Keystone to cease its commercial waste processing operation until Keystone had replaced the liners to DER's satisfaction. Keystone suspended operations and has not resumed them.

In 1983, Keystone, under new ownership, filed an application with the township's zoning hearing board for a special exception to store, process and dispose of industrial waste materials, including hazardous and toxic wastes. Keystone would construct two buildings for processing industrial waste and additional impoundment cells and leachate collection basins to treat and contain the runoff from the neutralized waste. The board denied Keystone's application, and the trial court, which did not receive additional evidence, affirmed on the record made at the board hearing.

The parties agreed that Keystone's proposal for a special exception was a light industrial use permitted as a special exception in the Mining zoning district.

The applicant for a special exception has both the duty of initially presenting evidence and the burden of persuading the fact finder that the use proposed satisfies the specific or objective requirements of the ordinance for the grant of a special exception. *Lower Merion Township v. Enokay, Inc.*, 427 Pa. 128, 233 A. 2d 883 (1967); *Bray v. Zoning Board of Adjustment*, 48 Pa. Commonwealth Ct. 523, 410 A.2d 909 (1980).

Objectors to the grant of the special exception have both the duty initially of presenting evidence and the burden of persuading the fact finder that the proposed use will be detrimental to general or nonobjective public interests such as the health, safety and welfare of the neighborhood. *Cherbel Realty Corporation v. Zoning Hearing Board,* 4 Pa. Commonwealth Ct. 137, 285 A.2d 905 (1972); *Derr Flooring Company, Inc. v. Whitemarsh Township Zoning Board of Adjustment,* 4 Pa. Commonwealth Ct. 341, 285 A.2d 538 (1971). The ordinance may place the burden of persuasion that the proposal will not offend nonobjective public interests upon the applicant. *Bray; Derr.* The Butler Township Zoning Ordinance is not claimed to, and our examination satisfies us that it does not, shift the burden to the applicants of persuading the fact finder of the absence of detrimental effect upon public interests.

Keystone therefore had the duty of presenting evidence and the burden of persuading the board that the use it proposed satisfies the specific requirements of the ordinance for the grant of a special exception. The township, which opposed the application, had the duty of presenting evidence and the burden of persuading the board that the proposal would be detrimental to the public interest.

The board found that Keystone had not established the specific or objective requirement for a special exception that its proposed facility would not be located in a flood plain area of the township. Section 508 of the Butler Township zoning ordinance provides regulations respecting activities in flood plain areas. Section 508.6 forbids the placement of any obstruction in a flood plain area.[2] Section 508.2(b) defines a flood

---

[2] Section 508.5(b) of the ordinance provides that upon special exception buildings may be erected in the "floodway fringe areas,"

plain area as: "(1) a relatively flat or low land area adjoining a river, stream, or watercourse which is subject to partial or complete inundation of water; (2) area subject to the unusual and rapid accumulation or runoff of surface water from any source." Section 508.3 further describes flood plain areas as follows:

Flood Plains are based on those areas that have been delineated by the U.S. Department of Housing and Urban Development as part of the National Flood Insurance Program or those areas which the U.S. Soil Conservation Service has classified as alluvial soils or local alluvium in the "Soil Survey, Schuylkill County, Pennsylvania."

The actual determination of the limits of such alluvial soils and the elevation of land subject to inundation by flooding due to a one hundred (100) year storm frequency shall be the responsibility of the applicant, and calculations shall be approved by the Soil Conservation Service, Corps of Engineers, and/or the Municipal Engineer.

Should the area designated as a flood plain on the Zoning Map be found to be inapplicable or

---

defined as areas not lying in the channel of the stream but which may be inundated by a 100 year flood, upon four conditions. The first condition, Section 508.5(b)(1), allows buildings if the "finished surface of the ground is higher than, or is raised by filling to, an elevation of at least one foot above the elevation of the 100 year flood." Sections 508.5(b)(2), (3) & (4) contain other required construction and placement features of buildings proposed to be placed in the floodway fringe areas Keystone seems not to have been proceeding under Section 508.5. In any event its proofs do not include evidence that the finished surface of the ground where it proposed to build was one foot above the elevation of the 100 year flood.

inaccurate, based upon calculations, then the zoning requirements for such property shall be deemed to be the regulations of the District in which the property is located.

Keystone's evidence pertinent to the question of whether its facility is located in a flood plain area as described by the ordinance consisted of the testimony of a professional engineer to the effect that the area had not been mapped by the Department of Housing and Urban Development and that calculations made by his office show, if we understand the record, that the height of the sides of the cells created to contain waste runoff and leachate would be twelve feet above the elevation of the 100 year flood. There is no evidence that the soils at the location, which as we have noted borders a stream, are not alluvial or local alluvium or that the elevation of the land was not subject to inundation by a 100 year storm. Keystone's engineer seems to have made some calculations concerning the elevation of the land on which the additional impoundment cells or leachate basins were to be located, suggesting as noted that the dike breasts would be above the 100 year flood elevation but, if we understand the testimony, that the bottoms would be below that elevation. None of the engineer's calculations were approved by the Soil Conservation Service, the Corps of Engineers or the township engineer, as the ordinance also required. We agree with the board and the court of common pleas that Keystone failed to carry its burden of persuasion that its land was not located in a flood plain area, an important specific or objective requirement for a special exception.

Keystone contends that the board committed an error by imposing upon it the burden of persuasion that the proposed use would not be detrimental to

health, safety, and welfare and other nonobjective interests. We agree that the board's observation that "Keystone has not adequately addressed . . . potential problems which could adversely affect the health and safety of township residents" demonstrates that the board did err in this respect. Therefore the board's conclusion that Keystone's proposal would be detrimental to the public interest was untenable and standing alone would not support the board's refusal of the special exception. But unfortunately for Keystone, it had the precedent obligation to prove that its proposal conformed with the specific or objective requirements for the grant of the special exception, so that the board's erroneous imposition of the burden of proof of nonobjective standards upon Keystone was without consequence.

Order affirmed.

ORDER

AND Now, this 19th day of June, 1985, the order of the Court of Common Pleas of Schuylkill County in the above-captioned matter is affirmed.