608 A.2d 607

In re Appeal of Ora HOOVER, Garland H. Hoover, Reynold A. Schenke, Darryl Wilson and Judith M. Wilson from the Decision of the Zoning Hearing Board of Paradise Township, Lancaster County, Pennsylvania.

Appeal of Ora HOOVER, Garland H. Hoover, Reynold A. Schenke, Darryl Wilson and Judith M. Wilson.

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 1991.

Decided April 27, 1992.

Matthew J. Creme, Jr., for appellants.

Elizabeth A. Hambrick–Stowe, for appellee, Tp. of Paradise.

Before COLINS and SMITH, JJ., and NARICK, Senior Judge.

SMITH, Judge.

Ora Hoover, Garland H. Hoover, Reynold A. Schenke, Darryl Wilson and Judith M. Wilson (collectively Objectors) appeal an order of the Court of Common Pleas of Lancaster County affirming a decision of the Zoning Hearing Board of Paradise Township (Board) dismissing Objectors' challenge to the issuance of a building permit. The Board concluded that Objectors lacked standing in this matter and that the issuance of the permit was authorized pursuant to Article XI, Sections 1000–1113 of the Revised Zoning Ordinance of Paradise Township of 1982 (1982 Ordinance).

By order dated February 19, 1992, this Court reversed the trial court's order and remanded the record with directions that the Board deny the issuance of a zoning and building permit to Paradise Township for construction of a sewage treatment plant, as a permitted use, in an area of the municipality located within the flood plain district in accordance with the 1982 Ordinance. This Court subsequently issued an order on March 24, 1992 which granted Paradise Township's application for reconsideration in order to address the Township's motion to dismiss Objectors' appeal.[1] In its motion, the Township challenges this Court's jurisdiction arguing that there is no justiciable case or controversy

---

1. By order dated June 13, 1991, this Court directed that the Township's motion to dismiss (motion to quash) this matter for lack of jurisdiction be listed for argument with the merits of the appeal. However, the issues raised in the motion were not addressed by the parties in their briefs.

since the 1982 Ordinance is pre-empted by state law and therefore void.

Section 1100 of the 1982 Ordinance provides in pertinent part:

> In the interest of public health, safety and welfare the establishment of floodplain conservation controls have been adopted for the following purposes:
>
> 1. To combine with other zoning requirements certain restrictions made necessary for the floodplains to promote the general health, welfare and safety of the community.
>
> . . . .
>
> 4. To reduce the financial burdens imposed on the community, its governmental units and its individuals by frequent and periodic floods and overflow of lands.

Section 1104 of the 1982 Ordinance provides in pertinent part:

> The following uses and no others are permitted in the Floodplain District:
>
> . . . .
>
> 9. Outlet installations for sewage treatment plants, sealed public water supply wells.

On October 5, 1989, the Paradise Township Zoning Officer issued a zoning and building permit to Paradise Township for construction of a sewage treatment plant in an area of the municipality located within the flood plain district. Objectors appealed the issuance of the permit. The Board held a hearing on December 12, 1989, at which Objectors argued that the proposed use may have an impact on their property and that a sewage treatment plant is not a permitted use pursuant to Section 1104 of the 1982 Ordinance. The Board dismissed Objectors' appeal. Paradise Township intervened in Objectors' appeal to the trial court which affirmed the Board by order dated January 11, 1991.

## I

The Township primarily contends that this Court lacks jurisdiction over Objectors' appeal to this Court because the

1982 Ordinance is void since it regulates construction of a sewage treatment plant within the flood plain district which is pre-empted expressly by the Flood Plain Management Act (Flood Act), Act of October 4, 1978, P.L. 851, *as amended,* 32 P.S. §§ 679.101–679.601, and by logical inference and implication by The Clean Streams Law, Act of June 22, 1937, P.L.1987, *as amended,* 35 P.S. §§ 691.1–691.1001, the Pennsylvania Sewage Facilities Act, Act of January 24, 1966, P.L. (1965) 1535, repealed in part by Section 15 of the Act of July 1, 1990, 35 P.S. § 750.1–750.20a, and the Dam Safety and Encroachments Act, Act of November 26, 1978, P.L. 1375, *as amended,* 32 P.S. §§ 693.1–693.27.

■■■ Pre-emption is a judicially-created principle based on the proposition that, as an agent of the state, a municipality cannot act contrary to the state. *Duff v. Township of Northampton,* 110 Pa.Commonwealth Ct. 277, 532 A.2d 500 (1987), *aff'd,* 520 Pa. 79, 550 A.2d 1319 (1988). The state may pre-empt municipal regulation of local activities either explicitly on the face of a statute or by implication when state and local powers actually and materially conflict. *See Van Bennett Food Co. v. City of Reading,* 87 Pa.Commonwealth Ct. 30, 486 A.2d 1025 (1985). One should not presume that the state intended to pre-empt a field by merely legislating in it. *Duff.* Although local ordinances are superceded to the extent that they contradict or are inconsistent with a statute that is not explicitly pre-emptive, municipalities may promulgate supplemental or additional regulations which are reasonable and do not offend the spirit of state regulatory provisions. *Skepton v. Borough of Northampton,* 87 Pa.Commonwealth Ct. 24, 486 A.2d 1022 (1985); *Holland Enterprises, Inc. v. Joka,* 64 Pa.Commonwealth Ct. 129, 439 A.2d 876 (1982).

■■ Section 302(a)(4) and (e) of the Flood Act, 32 P.S. § 679.302(a)(4), (e), provides, inter alia, that the Department of Environmental Resources shall have exclusive jurisdiction to regulate "any obstruction owned or maintained by a person engaged in the rendering of a public utility service"; and, to the extent possible, it shall regulate those obstruc-

tions in a manner consistent with the standards and criteria established in municipal flood plain management regulations. Obstruction is defined in Section 104 of the Flood Act, 32 P.S. § 679.104, as "[a]ny structure or assembly of materials including fill above or below the surface of land or water, and any activity which might impede, retard or change flood flows." Municipal flood plain management regulations are defined as "[z]oning ordinances, subdivision regulations, building codes, health regulations, special purpose ordinances and other applications of police power ... such [as] State or local regulations, in any combination thereof, which provide standards for the purpose of flood damage, prevention and reduction." *Id.*

Thus, the Flood Act does not pre-empt the 1982 Ordinance since the statute does not expressly state that the Department of Environmental Resources has exclusive jurisdiction over the entire field of flood plain management; and, the 1982 Ordinance does not actually or materially conflict with the statute since the 1982 Ordinance regulates land use and the statute exclusively regulates the structure of public utility service facilities such as sewage treatment plants. *See Municipality of Monroeville v. Chambers Dev. Corp.,* 88 Pa.Commonwealth Ct. 603, 491 A.2d 307 (1985).

Likewise, this Court rejects the Township's contention that the provisions of the Flood Act together with The Clean Streams Law, the Pennsylvania Sewage Facilities Act, and the Dam Safety and Encroachments Act constitute a sufficiently comprehensive regulatory scheme so pervasive that it is indicative of the Legislature's intent to pre-empt the entire field of flood plain management thereby preventing local municipalities from promulgating special purpose ordinances regulating land use in flood plain areas in order to promote the general health, welfare and safety of the community. *See Commonwealth v. Wilsbach Distribs., Inc.,* 513 Pa. 215, 519 A.2d 397 (1986) (holding that the Liquor Code and regulations promulgated thereunder indicate the Legislature's clear intention to regulate every aspect of the alcoholic beverage industry); *City of Pitts-*

*burgh v. Allegheny Valley Bank of Pittsburgh,* 488 Pa. 544, 412 A.2d 1366 (1980) (holding that the Banking Code and the Department of Banking Code indicate the Legislature's intention to exclusively regulate the state banking field). Thus, based upon the foregoing reasoning, the Township's motion to dismiss Objectors' appeal must be denied.

## II

■ The issues Objectors raise in their appeal to this Court are whether individuals who own property in close proximity to a site for which a building permit is issued for an allegedly prohibited use have standing to appeal; and whether construction of a sewage treatment plant is a permitted use under the 1982 Ordinance.[2]

■ At the hearing before the board, Garland Hoover and Reynold Schenke testified for Objectors. Mr. Hoover testified that he lived approximately 150 yards from the proposed building site and that part of his property, including his house, is located within the flood plain district. Mr. Schenke testified that his residence is also in the flood plain and is located about 200 yards from the proposed site in Leacock Township.

George Rettew, Jr., George Wagner, Jr., and Carl A. Meshey also testified. Mr. Rettew testified that he is a registered professional engineer; his business name is Rettew Associates; he has been the township municipal engineer since 1979; and that he and his staff have been involved with the sewage treatment plant project since its inception in 1984. He further testified that Paradise Township adopted its first flood plain ordinance in 1978 which was revised in 1981; the language used in the 1978 and 1981 regulations were based on language developed by the

**2.** Where the trial court received no additional evidence on a zoning appeal, this Court's scope of review is limited to a determination of whether the Board abused its discretion or committed an error of law. *Valley View Civic Ass'n v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983).

Federal Emergency Management Agency (FEMA); he was a participating member of the committee that drafted and recommended adoption of the language contained in the 1982 Ordinance; the intent of the 1982 Ordinance was to permit the sewage treatment plant in the flood plain district; and Section 1104(9) of the 1982 Ordinance is referring to the sewage treatment plant and not just an outfall line from the plant. Mr. Wagner testified that he is an environmental engineer with Rettew Associates and that the proposed sewage treatment plant consists of a control building, a series of tanks, and a pump station. Carl A. Meshey testified that he was a Supervisor of Paradise Township and a member of the committee that drafted and recommended adoption of the language contained in the 1982 Ordinance. Mr. Meshey further testified that when the 1982 Ordinance was adopted, it was the intent of the board of supervisors to allow sewage treatment plants in the flood plain district.

In its decision, the Board stated as follows:

18. The Board concludes that the appellants are not aggrieved parties within the meaning of the law and that they therefore lack standing to appeal the decision of the Zoning Officer.

19. The board concludes that the Zoning Officer properly interpreted Sect. 1104(9) of the ordinance as permitting construction of the sewage treatment plant in the Flood Plain District.

20. The board further concludes that, since Sect. 1104(9) and (10) replace former Sect. 1107(4) of the 1978 Township zoning ordinance, which included as a permitted use "public utility facilities not under the exclusive jurisdiction of the Pennsylvania Public Utility Commission." Sewage treatment plants are precisely within this category of use, as they constitute a public facility over which the P.U.C. has no jurisdiction.

. . . .

22. The board concludes that if Sect. 1104(9) referred only to outlet sewer lines, it would be redundant and unnecessary, since such lines would be included within

subparagraph (10) as utility transmission lines. Thus, the term "outlet installation for sewage treatment plants" must be construed as including the plant itself.

Board Decision, pp. 2–3.

Section 913.3 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10913.3, allows, inter alia, that any person aggrieved by the grant of a permit by a zoning officer may appeal to the Board. This court has interpreted "person aggrieved" to require an interest in the subject matter which is direct, pecuniary and substantial. *See Cablevision–Division of Sammons Communications, Inc. v. Zoning Hearing Board of City of Easton,* 13 Pa.Commonwealth Ct. 232, 320 A.2d 388 (1974). In *Miller v. Upper Allen Township Zoning Hearing Board,* 112 Pa.Commonwealth Ct. 274, 535 A.2d 1195 (1987), this Court held that the residents of a neighboring municipality, who lived in close proximity to a tract of land for which a special exception was granted to construct a retirement village, had standing to object since the intervention of a municipal line is not germane to an aggrieved person's status under the MPC. Further, in *Collis v. Zoning Hearing Board of East Allen Township,* 51 Pa.Commonwealth Ct. 368, 415 A.2d 102 (1980), this Court upheld a zoning board's reversal of a zoning officer's interpretation of an ordinance and found that a landowner about to suffer the incursion of a nonconforming use on land abutting his home was aggrieved by the zoning officer's misinterpretation.

In the matter sub judice, Objectors clearly established standing by presenting uncontradicted testimony that they reside in the flood plain in close proximity to the proposed use. This Court rejects the Board's reasoning that in order to be aggrieved, the parties had to establish pecuniary or financial loss as a result of the proposed use and that "but for the flood plain the proposed plant would be a permitted use, and therefore, any 'harm' to the [Objectors] must necessarily relate to the issues of flooding." Board Decision, p. 2. As in *Collis,* the subject matter here is an

alleged misinterpretation of the 1982 Ordinance. The Board thus erred in determining that Objectors must establish flood-related harm in order to be aggrieved.[3] To hold otherwise would allow municipalities to avoid public challenge and ignore regulatory prohibitions by simply classifying a prohibited or nonconforming use as permitted rather than amending the ordinance or seeking a variance.

On the merits, Objectors argue that Section 1104(9) should be strictly construed as permitting only discharge effluent lines from a sewage treatment plant and not the plant itself. Objectors also contend that the Board erred by considering the testimony of Messrs. Rettew and Meshey since their testimony merely amounted to their recollection and understanding of intentions and does not amount to legislative history which is contemporaneous to enactment. The Township argues that the history of the 1982 Ordinance and the testimony before the Board clearly establish that the sewage treatment plant is a permitted facility in accordance with Section 1104(9) of the 1982 Ordinance.

Objectors' contention that the Board should not have considered Messrs. Rettew and Meshey's testimony is without merit. In *Derr Flooring Co. v. Whitemarsh Township Zoning Board of Adjustment,* 4 Pa.Commonwealth Ct. 341, 285 A.2d 538 (1971), a township supervisor read into the record a recommendation of the board of supervisors relating to an ordinance. This Court found that "[a]lthough this recommendation of the Township Supervisors had no significant or binding effect whatsoever on whether or not [Appellee's] request comes within the purview of the ordinance as amended, it could be used as evidence having a bearing on the Board of Supervisors' intent in the passing of the

---

3. This is not a matter wherein Objectors are challenging the grant of a variance or special exception to an ordinance and are afforded an opportunity to present evidence and cross-examine witnesses to establish the degree of harm that a proposed use may cause. Here, the Township recognized the narrow issue before the Board and objected to a subpoena for documents regarding the desirability of the site and its negative impact on the level of flooding because such information was irrelevant to the issue. N.T., p. 100.

zoning amendment." *Id.,* 4 Pa.Commonwealth Ct. at 345, 285 A.2d at 541. However, this Court further instructed that while evidence of intention can be admitted, it is the Board which has the power to interpret the meaning of the ordinance as it applies to the facts presented. *Id.* Thus, the Board correctly admitted the testimony but incorrectly considered it substantial evidence while ignoring the plain language and history of the 1982 Ordinance.

■ A land use ordinance must be strictly construed. *Exton Quarries, Inc. v. Zoning Board of Adjustment,* 425 Pa. 43, 228 A.2d 169 (1967). A review of the 1978 Ordinance reveals that a sewage treatment plant was permitted as a special exception use since it is a public utility facility not under the exclusive jurisdiction of the Pennsylvania Public Utility Commission. Section 1107 of the 1978 Ordinance provided in pertinent part:

*Special Exception Uses*

. . . .

4. Public utility facilities not under the exclusive jurisdiction of the Pennsylvania Public Utility Commission, subject to the following conditions:

(a) Facilities such as pipelines, . . . outlet installations for sewage treatment plants, . . . be designed and installed underground. . . .

This ordinance was revised in 1981 and like Section 1104(9) of the 1982 Ordinance, Section 1106(5)(i) of the 1981 Ordinance provided, inter alia, that outlet installations for sewage treatment plants were permitted uses and made no provisions for public utility facilities not under the exclusive jurisdiction of the Pennsylvania Public Utility Commission. Thus, review of the three ordinances reveals a distinction between a public utility facility (e.g., a sewage treatment plant) and outlet installations for sewage treatment plants and indicates that a sewage treatment plant was not provided for as either a special exception or permitted use in the

486

1981 or 1982 Ordinances.[4] Consequently, since Mr. Wagner testified that the proposed sewage treatment plant consists of a control building, series of tanks and a pump station, it was error for the Board to disregard the plain language of the 1982 Ordinance and conclude that Section 1104(9) permits construction of the sewage treatment plant in the flood plain district.

Accordingly, the order of the trial court affirming the decision of the Board is reversed.

## ORDER

AND NOW, this 27th day of April, 1992, Paradise Township's motion to dismiss this matter for lack of jurisdiction is denied. The order of the Court of Common Pleas of Lancaster County is reversed and the record remanded with directions that the Paradise Township Zoning Hearing Board deny the issuance of a zoning and building permit to Paradise Township for construction of a sewage treatment plant, as a permitted use, in an area of the municipality located within the flood plain district in accordance with Article XI, Sections 1000–1113 of the Revised Zoning Ordinance of Paradise Township of 1982.

---

4. At some length, the Township argues the benefits of locating a sewage treatment plant in the flood plain district and attaches to its brief relevant sections of five flood plain ordinances for municipalities in Lancaster County. Although this Court will not address this argument because it is irrelevant to the issue at hand, it is interesting to note that in four of the ordinances, public utility facilities not under the exclusive jurisdiction of the Public Utility Commission are expressly provided for as either a permitted or special exception use; and the fifth ordinance specifically states that a sewage treatment plant may be allowed as a special exception use.