IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re Appeal of: Friends of Marconi        :
Plaza and Rich Cedrone and                 :
Joseph Q. Mirarchi                         :
                                           :
From a decision of: The City of            :        No. 938 C.D. 2021
Philadelphia Board of License              :        Argued: June 23, 2022
and Inspection Review                      :
                                           :
Appeal of: City of Philadelphia            :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION
BY SENIOR JUDGE LEAVITT                              FILED:  December 9, 2022


          The City of Philadelphia (City) appeals an order of the Court of
Common Pleas of  Philadelphia County (trial court) that reversed the adjudication
of the City's Board of License and Inspection Review (L&I Board) authorizing the
removal of the statue of Christopher Columbus from Marconi Plaza.  The trial court
held that the City's evidence did not establish that the statue's removal was necessary
in the public interest, and, further, the City did not comply with the procedural
requirements that govern the preservation of public art and historic objects, such as
the 146-year-old marble statue of Columbus.  In its appeal, the City argues that the
opponents of the statue's removal from a public park lacked standing to bring their
challenge, and, further, the trial court erred by not giving the City's construction of
the applicable ordinance and policy controlling weight.  After review, we affirm the
trial court.

**Background**

In 1872, City residents, led by Agostino Lagomarsino,[1] organized the Columbus Monument Association to honor the explorer with a memorial statue for the country's 1876 centennial celebration. Supplemental Reproduced Record at 2854b-58b (S.R.R. __). With contributions from various sources, including King Victor Emmanuel II, the association commissioned a marble statue of Christopher Columbus, which was done in Italy. *Id.* The statue, which is 10 feet tall and sits atop a 12-foot pedestal, was installed in Fairmount Park for the 1876 Centennial Exposition and dedicated on October 12, 1876. It was one of the first monuments to Columbus in the United States. In 1976, the Columbus statue was moved to Marconi Plaza, a 19-acre park on South Broad Street, where it is surrounded by a high wrought iron fence that depicts Columbus's three ships that sailed on the first voyage to the Americas. By tradition, the annual parade on Columbus Day, recently renamed Indigenous Peoples' Day[2] by the City, ends at the Columbus statue in Marconi Plaza.

Following the death of George Floyd in Minneapolis, Minnesota, civil unrest developed in Philadelphia. On June 13, 2020, a clash occurred in Marconi Plaza when residents "arrived 'to protect' [the statue] from perceived threats" and were armed with "guns, baseball bats, golf clubs, and sticks." Removal Application

---

[1] Lagomarsino was an early leader in the Philadelphia Italian business community. Supplemental Reproduced Record at 2857b (S.R.R. __).

[2] "[F]or the first time, the City holiday celebrated on the second Monday of October will be recognized as Indigenous Peoples' Day rather than Columbus Day." Press Release, Mayor's Office of Civic Engagement and Volunteer Service, et al., City's Pathways to Reform, Transformation and Reconcilation Provides 6-Month Update, City of Philadelphia's Press Releases (February 3, 2021) (on file with author); https://www.phila.gov/2021-02-03-citys-pathways-to-reform-transformation-and-reconciliation-provides-6-month-update/ (last visited December 8, 2022).

at 1; Reproduced Record at 43a, 86a (R.R.__). Intermittent clashes occurred over the next week, with the last disturbance on June 23, 2020, a few days after the City enclosed the Columbus statue in a wooden box.

On June 15, 2020, the Mayor of Philadelphia, James Kenney, wrote to Margot Berg, the City's Public Art Director, requesting her to "initiate as soon as possible the public process . . . for the possible removal of the statue [] located at Marconi Plaza on South Broad Street." Removal Application at 6; R.R. 48a. The Mayor's letter elaborated as follows:

> Christopher Columbus, like many historical figures, has supporters and detractors. For centuries, he has been venerated with the stories of his traversing the Atlantic and "discovering" the "New World." However, his history is much more infamous. Mistakenly believing he had found a new route to India, Columbus enslaved indigenous people, and punished individuals who failed to meet his expected service by severing limbs, or in some cases, murder. Surely the totality of this history must be accounted for when considering whether to erect or maintain a monument to this person.
>
> I believe that a public process allowing for all viewpoints, especially those of indigenous people whose ancestors suffered under the rule of European settlers, to be in the best interest of the City.

*Id.*

The public process referenced by the Mayor requires, *inter alia*, public notice and input before any work of public art may be removed from its current site. The City's Office of Arts, Culture and the Creative Economy (Office of Arts) is governed by a 1998 "Policy on the Donation, Placement and Removal of Public Art" entitled "Managing Director's Directive 67" (Directive 67). R.R. 406a. With respect to removal of public art, Directive 67 states, *inter alia*, as follows:

3

In the case of a *proposal to remove due to public protest*, an opportunity to solicit and obtain *public input shall be provided* by the Office of Arts, Culture and the Creative Economy or its successor agency *prior to further action on the proposal*. A period of no less than ninety (90) days shall be provided for public input on the matter.

Directive 67, §B.III.2 (emphasis added). "After the period of public notice and input," the Public Art Director "shall present the proposal to the Department of Parks and Recreation . . . ." *Id*. §B.III.5. Thereafter, the Public Art Director must apply to the City's Art Commission for "final approval of the proposal" to remove the work of public art. *Id*. §B.III.6.

In 2017, the City's Historical Commission designated the Columbus statue an "historic object." PHILADELPHIA CODE §14-203(148). As such, the statue was found to have "significant character, interest, or value as part of the development, heritage, or cultural characteristics of the City, Commonwealth, or nation . . . ." PHILADELPHIA CODE §14-1004(1)(a). The City established the Historical Commission to protect and preserve sites, buildings, and objects it has designated as historic, *id*. §14-301(7), and a designated historic object may not be demolished without the approval of the Historical Commission. *Id*. §14-1005(5)(a). The City's historic preservation ordinance defines "demolition" and "demolish" as "*the removal of a* building, structure, site, or *object from its site* or the removal or destruction of the façade or surface." *Id*. §§14-1002(5), 14-203(88) (emphasis added). In short, the removal of the Columbus statue from its site in Marconi Plaza constitutes a "demolition" of an historic object that requires the approval of the Historical Commission.

On June 24, 2020, as agreed in a June 15, 2020, court-approved stipulation, the Office of Arts began the process of collecting public input on the

4

proposed removal of the Columbus statue from Marconi Plaza. On July 16, 2020, the Office of Arts submitted an application to the Historical Commission seeking approval of the statue's removal from Marconi Plaza. This "further action" was taken 28 days after the Office of Arts began its process of collecting public input on its proposal to remove the statue of Christopher Columbus. However, Directive 67 requires a period of 90 days for public input "prior to further action on the proposal." Directive 67, §B.III.2.

On July 24, 2020, the Historical Commission held a five-hour Zoom hearing on the Office of Arts' removal application. The hearing was attended by more than 180 people and lasted nearly 6 hours, during which the Historical Commission heard testimony and received documents from the participants.[3] The Historical Commission's staff recommended that the Columbus statue be removed to advance public safety and to protect the statue. Friends of Marconi Plaza and two of its members, Rich Cedrone (Cedrone) and Joseph Q. Mirarchi (Mirarchi) (collectively, Objectors), attended the Zoom meeting and expressed opposition to the statue's removal.

At the conclusion of the meeting, the Historical Commission voted 10 to 2 to approve the removal of the statue. Based on an affidavit of an advisor to the City's Police Commissioner and news reports attached to the Office of Arts' removal application, the Historical Commission found that the continued display of the statue in Marconi Plaza presented a danger to public safety. The Historical Commission

---

[3] *See* Historical Commission Minutes, 7/24/2020, at 1-5, 8-21; CITY OF PHILADELPHIA, HISTORICAL COMMISSION, Meeting minutes, https://document-archive.phila.gov/#/Historical_Commission/Meeting_Minutes (last visited December 8, 2022). The minutes are not in the record.

imposed four conditions on its approval of the removal of the statue from Marconi Plaza:

> (1) The statue is stored at an undisclosed, secure location within the City of Philadelphia; (2) The statue is moved to the storage facility under the auspices of a conservator and by a firm experienced in the moving of important works of art; (3) The City reports to the Historical Commission annually on the statue's condition and situation; and (4) The statue is visually recorded with a three-dimensional, digital, laser scan before it is moved to the storage facility.

Historical Commission Decision, 7/29/2020, at 1; S.R.R. 27b.

On July 31, 2020, Objectors appealed the Historical Commission's decision to the City's L&I Board and requested a stay of the Historical Commission's decision until the Art Commission voted on a separate application to remove the statue. On August 12, 2020, the Art Commission voted to approve the removal of the statue of Columbus.[4]

The L&I Board held hearings on Objectors' appeal on August 7, 2020, August 17, 2020, and September 29, 2020. Before the L&I Board, the City challenged Objectors' standing to appeal the Historical Commission's decision.

In response to the City's challenge, Objectors presented evidence of their standing as individuals and as an association. Cedrone and Mirarchi testified that they live in close proximity to the park and regularly participate in events there that incorporate the statue of Columbus. Objectors explained that Friends of

---

[4] Objectors filed an emergency motion for injunctive relief, and the trial court ordered the Art Commission not to render a "decision prior to receiving the recommendation of the Historical Commission which the Art Commission shall take into account before rendering its own decision." Trial Court Order, 7/16/2020; S.R.R. 25b. Objectors appealed the Art Commission's decision to the L&I Board, which appeal remains pending. The City moved to dismiss for lack of jurisdiction, but the L&I Board has not acted on this motion. City Brief at 6-7.

6

Marconi Plaza is a non-profit organization that has been recognized by the City's Department of Parks and Recreation as a "legitimate friends group" and "the official private caretaker of Marconi Plaza." Objectors' Brief at 26; Notes of Testimony (N.T.), 8/7/2020, at 18; R.R. 437a. Objectors presented testimony that they raise funds and do work "to help preserve and beautify the park," including, for example, the installation of new benches throughout Marconi Plaza. N.T., 8/17/2020, at 65-69, 74-81; R.R. 635a-36a; 638a-39a. In 2019, the City named Marconi Plaza a "signature park." N.T., 8/17/2020, at 69; R.R. 636a.

The L&I Board concluded that because Cedrone and Mirarchi did not present this evidence at the Zoom meeting before the Historical Commission, they did not establish their standing as individuals to object to the removal of the Columbus statue. As a consequence, "[h]aving failed to establish that any of its members are aggrieved," Friends of Marconi Plaza did not make its case for associational standing. L&I Adjudication at 17; R.R. 672a.

The L&I Board affirmed the Historical Commission's decision. It reasoned that the Commission's approval of the application to remove the Columbus statue "was based on substantial, credible evidence supporting a finding that the action was necessary to protect the public health and safety." *Id*. That evidence consisted of letters from the Mayor's office and the City's Public Art Director. Accordingly, the L&I Board affirmed the Historical Commission's decision "on the merits and on the independent ground that [Friends of Marconi Plaza] lack[s] standing." L&I Adjudication at 18; R.R. 673a. Objectors appealed the L&I Board's decision to the trial court.

7

Before the trial court, Objectors argued, *inter alia*, that the L&I Board erred. Objectors argued that they had standing to challenge the Historical Commission's approval of the removal of the Columbus statue from Marconi Plaza; the Historical Commission did not receive evidence on the effect of removal of the statue, as required by Sections 14-1001(1) and (4),[5] and 14-1005(6)(e)(.3)[6] of The Philadelphia Code, or any evidence that public safety was an issue; and the Office of Arts violated Directive 67 because it filed an application with the Historical

---

[5] It states:

> It is hereby declared as a matter of public policy that the preservation and protection of buildings, structures, sites, *objects*, and districts of historic, architectural, cultural, archaeological, educational, and aesthetic merit are public necessities and are in the interests of the health, prosperity, and welfare of the people of Philadelphia. The purposes of this [ordinance] are to:
>
> > (1) *Preserve* buildings, structures, sites, and *objects that are important to the education, culture, traditions, and economic values of the City*; [and]
> >
> > * * * *
> >
> > (4) *Afford the City, interested persons,* historical societies, and *organizations the opportunity to acquire or to arrange for the preservation of historic* buildings, structures, sites, and *objects that are designated individually* or that contribute to the character of historic districts[.]

PHILADELPHIA CODE §14-1001(1), (4) (emphasis added).

[6] It states:

> (e) Review Criteria.
>
> > In making its determination as to the appropriateness of proposed alterations, demolition, or construction, the Historical Commission shall consider the following:
> >
> > * * * *
> >
> > > (.3) The effect of the proposed work on the building, structure, site, or object and its appurtenances;

PHILADELPHIA CODE §14-1005(6)(e)(.3).

Commission 28 days after initiating the process of public input, instead of waiting 90 days for the completion of the public input process.

On August 10, 2021, the trial court heard argument on Objectors' appeal of the L&I Board's adjudication. On August 17, 2021, the trial court sustained the appeal and reversed the adjudication of the L&I Board.

First, the trial court determined that Objectors had standing under *Dowds v. Zoning Board of Adjustment*, 242 A.3d 683, 694 (Pa. Cmwlth. 2020), because they "have been active caretakers of [the] Plaza for the past ten (10) years coordinating the park's upkeep, beautification, and modernization," "regularly utilize [the] Plaza for numerous social and fundraising events[,]" and "are a recognized 'friends' group of the Philadelphia Department of Parks and Recreation." Trial Court Opinion, 8/17/2021, at 1-2 (footnotes omitted). On this evidence, the trial court concluded that Objectors "have a substantial, direct and immediate interest in the outcome of the litigation *sub judice* because removal of the [statue] will impact the nature of the park." *Id.* at 2.

Second, the trial court determined that the L&I Board erred because the Historical Commission's decision to remove the statue did not satisfy the terms of the ordinance. *See* PHILADELPHIA CODE §14-1005(6)(e)(.3). Specifically, the trial court found that the "unauthenticated, unattributed, and cursory" two-page "Guidance for Marble Sculpture Removal" was "void of any quantitative, dimensional attributes of the [s]tatue and its present condition that otherwise would aid in determining the effect of removal on a statue more than 100 years old." Trial Court Opinion, 8/17/2021, at 2. Even so, that two-page report acknowledged the "very good chance that parts of the sculpture may crack when it is removed." *Id.* The trial court concluded that the Historical Commission could not act on a removal

9

application until it had received and reviewed a definitive plan for handling the statue's removal from Marconi Plaza.

Third, the trial court determined that the Historical Commission "was not presented [with] adequate information or evidence to conclude that public safety was or is an ongoing concern" with respect to the Columbus statue. Trial Court Opinion, 8/17/2021, at 4. The trial court held that the affidavit and news accounts presented to the Historical Commission did not constitute probative or substantial evidence. Even so, "only isolated incidences in the wake of the George Floyd protests were presented." Trial Court Opinion, 8/17/2021, at 4. Simply, the public protest that triggered the removal application ceased 10 days after it started.

Finally, the trial court determined that the L&I Board erred because the Office of Arts failed to adhere to Directive 67 by allowing only 28 days of public input, rather than the 90 days guaranteed by Directive 67, §B.III.2. Trial Court Op., 8/17/2021, at 4. The Historical Commission lacked jurisdiction to address, let alone make a decision on, the removal application until after the Office of Arts had received and evaluated the public input required by Directive 67.

The City filed the instant appeal of the trial court's order.[7]

## Appeal

On appeal, the City raises three issues. First, the City argues that Objectors lacked standing to appeal the Historical Commission's decision that the removal of the Columbus statue was necessary in the public interest. *See*

---

[7] Where the trial court takes no additional evidence, this Court's review determines whether constitutional rights were violated, whether an error of law was committed, or whether findings of fact are supported by substantial evidence. Section 754(b) of the Local Agency Law, 2 Pa. C.S. §754(b); *Philadelphia Eagles Football Club, Inc. v. City of Philadelphia*, 823 A.2d 108, 118 n.11 (Pa. 2003). Because the issue in this case involves a question of law, our standard of review is *de novo*. *Philadelphia Eagles Football Club, Inc.*, 823 A.2d at 118 n.11.

10

PHILADELPHIA CODE §14-1005(6)(d) (permit to demolish an historic object cannot issue except where "*necessary in the public interest*") (emphasis added). Second, the City argues that the Historical Commission properly exercised its discretion given the risk of vandalism to the statue and the absence of evidence from Objectors that removal could not be safely accomplished. In any case, the conditions in the Historical Commission's approval ensured that the removal will be properly executed. Third, the City argues that the trial court erred in its construction and application of Directive 67.

Objectors respond that their presentations to the L&I Board and the Historical Commission demonstrate their standing to challenge the Historical Commission's decision. Second, Objectors argue that the Historical Commission's decision was flawed because it did not receive any information about the current condition of the statue; did not know what company would do the removal; and the Office of Arts' own application indicated that removing the statue would likely damage it. Finally, Objectors assert that the City violated Directive 67, which was binding on the Office of Arts, by not allowing the full 90-day period of public input on the question of whether the Columbus statue should be removed from Marconi Plaza before taking steps to effect the statue's removal.

## Analysis

### I. Standing

We begin with the City's standing issue. The City argues that because the individual objectors do not own property immediately adjacent to the Columbus statue, they cannot demonstrate a "particularized impact on their use and enjoyment of their property" should the statue be removed. City Brief at 3. The City acknowledges that Friends of Marconi Plaza may have invested time and resources

11

in the park, but not in the Columbus statue itself, and, thus, its removal will not affect the association. The City dismisses Objectors' standing as based merely "on their aesthetic appreciation for the [s]tatue and [their] caretaking of the park generally, but these interests are no greater than the interest of the general public." City Brief at 26. Stated otherwise, the City asserts that Objectors will not be aggrieved by the removal of the Columbus statue from Marconi Plaza.

Generally, "a party seeking judicial resolution of a controversy 'must establish as a threshold matter that he has standing to maintain the action.'" *Johnson v. American Standard*, 8 A.3d 318, 329 (Pa. 2010) (quotation omitted). In the seminal case *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269 (Pa. 1975), our Supreme Court explained that

> [t]he core concept, of course, is that a person who is not adversely affected in any way by the matter he seeks to challenge is not "aggrieved" thereby and has no standing to obtain a judicial resolution of his challenge. In particular, it is not sufficient for the person claiming to be "aggrieved" to assert the common interest of all citizens in procuring obedience to the law.

*Id*. at 280-81 (footnotes omitted). To be aggrieved, the putative party must have a substantial, direct, and immediate interest in the claim sought to be litigated. *Fumo v. City of Philadelphia*, 972 A.2d 487, 496 (Pa. 2009). In this regard, our Supreme Court has established the following principles:

> A "substantial" interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law. A "direct" interest requires a showing that the matter complained of caused harm to the party's interest. An "immediate" interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it, and is shown where the interest the party seeks to protect is within the zone of interests sought to

12

be protected by the statute or constitutional guarantee in question.

*South Whitehall Township Police Service v. South Whitehall Township*, 555 A.2d 793, 795 (Pa. 1989) (quotations omitted). The "keystone to standing in these terms is that the person must be negatively impacted in some real and direct fashion." *Markham v. Wolf*, 136 A.3d 134, 140 (Pa. 2016) (quotation omitted).

An association may have derivative standing as the representative of its members, where at least one member will sustain an immediate or threatened injury from the challenged action. *Robinson Township, Washington County v. Commonwealth*, 83 A.3d 901, 922 (Pa. 2013). For an association to have standing in its own right, it must be aggrieved; it is not enough to show that the challenged action implicates the organization's mission in some way. *Armstead v. Zoning Board of Adjustment of City of Philadelphia*, 115 A.3d 390, 399-400 (Pa. Cmwlth. 2015).

In *Society Hill Civic Association v. Philadelphia Board of License & Inspection Review*, 905 A.2d 579, 586 (Pa. Cmwlth. 2006), we considered an association's standing to appeal the Historical Commission's approval of alterations to historic townhomes in the Society Hill section of Philadelphia. We concluded that the association had standing in its own right because of its commitment to the improvement, preservation, and restoration of one particular neighborhood in the City. We reasoned as follows:

> The Association [] was created, *inter alia*, to promote "the improvement of the Society Hill area of Philadelphia . . . and the preservation and restoration of its historic buildings." It includes residents, businesses and other organizations [that] actively seek to protect historic buildings in the neighborhood, and it has over 900 dues-paying members.

> The Association and its members were directly involved in the subject of this litigation by negotiating . . . for preservation of the façades of [] townhouses and expressing their concerns at various public meetings . . . . Because of its *purpose to promote preservation and restoration* of historic buildings in the Society Hill area, the Association has *a substantial, direct and immediate interest* in the outcome of this litigation. Clearly, the Association had standing to appeal.

*Id.* (internal citations omitted) (emphasis added).

In *Dowds*, 242 A.3d 683, several homeowners appealed, *inter alia*, the City's grant of a variance to allow a building to exceed the maximum allowable height. Drawing on the precedent in *Society Hill*, we identified the factors that will demonstrate standing in a land use appeal: (1) being a recognized community organization, (2) expressing concerns at meetings before the Historical Commission, and (3) participating in negotiations with the permit applicant. Although these factors were developed to address an association's standing in its own right, we concluded they can be used to evaluate the standing of individuals. Because the individual objectors had been involved in the 2007 permit process, had intervened and participated in the hearing on the application to increase the building's height, and owned nearby townhouses, we held that the objectors "demonstrated a substantial, direct[,] and immediate interest in the outcome of this matter beyond that of the general interest of a taxpayer." *Id.* at 695.

With this background, we consider the standing of Objectors, both the individuals, Cedrone and Mirarchi, and the association, Friends of Marconi Plaza.

Cedrone testified that he resides approximately one and one-half blocks from Marconi Plaza. Ten years ago, he helped establish Friends of Marconi Plaza, which has been recognized by the City's Department of Parks and Recreation as a

14

"friends group."[8] N.T., 8/7/2020, at 18; R.R. 437a. He has served as president of Friends of Marconi Plaza for nine years. During that time, he has participated in events to improve the park and in the annual October 12th celebration, which includes a parade that ends at the Columbus statue in Marconi Plaza. N.T., 8/7/2020, at 20; R.R. 439a. For his part, Mirarchi testified that he lives approximately six blocks from Marconi Plaza, where he played as a child and now jogs. He has friends and family that live adjacent to the park. Mirarchi testified that he participates in Columbus Day events at Marconi Plaza, as an individual and a member of several organizations, including

> the Mummers' Brigade, the Jesters['] New Year[']s Brigade, I'm affiliated with the South Philadelphia Fancies Brigade, which are both active participants in the Columbus Day parade that occurs annually in Philadelphia and at the Marconi Plaza. *I'm also involved with* the 1492 Society . . . which is one of the lead organizers of the parade festivities and other *numerous organizations* that I can identify that I'm involved with or affiliated with *that actively use that park and in particular the Columbus Day statue as part of respective functions for the City as well as for the groups*.

N.T., 8/7/2020, at 26; R.R. 445a (emphasis added). We conclude that Cedrone and Mirarchi have standing as individuals.

First, Cedrone and Mirarchi have standing because they will be adversely affected by the City's action they challenge. *William Penn Parking Garage*, 346 A.2d at 280. Both Cedrone and Mirarchi live in close proximity to Marconi Plaza. *See Appeal of Hoover*, 608 A.2d 607, 611 (Pa. Cmwlth. 1992)

---

[8] "Park Friends groups are community-led organizations that partner with Philadelphia Parks & Recreation and Fairmount Park Conservancy [] to make local parks stronger." PHILADELPHIA PARKS & RECREATION, https://www.phila.gov/departments/philadelphia-parks-recreation/get-involved/park-friends-groups/ (last visited December 8, 2022).

(residing within 450 feet to 600 feet of a contested use established standing). More to the point, Cedrone and Mirarchi use Marconi Plaza and participate in events specifically involving the Columbus statue. They participated in proceedings before the Historical Commission, negotiated with the City and instituted litigation to enjoin the removal of the statue on the basis that the Office of Arts failed to comply with Directive 67. *Dowds*, 242 A.3d 683. These factors demonstrate a substantial, direct, and immediate interest beyond "the general interest of a taxpayer." *Id*. at 695.

Second, we reject the City's argument that the individual Objectors are mere taxpayers without standing. Section 17.1 of the First Class City Home Rule Act (Home Rule Act)[9] provides that taxpayers are generally not considered to be "aggrieved persons" and, thus, cannot challenge a decision of a zoning board that regulates development.[10] *Society Hill* and *Dowds* addressed what evidence must be presented by a party in a land use appeal to show that one is an "aggrieved person." It is true that the Historical Commission is established in a chapter of the zoning code. However, "historic objects" and public works of art, such as the Columbus statue, do not involve the "[regulation] of development." Section 17.1 of Home Rule Act, 53 P.S. §13131.1. Taxpayers fund the acquisition and maintenance of the City's public works of art. In *Board of Trustees of Philadelphia Museums v. Trustees of*

---

[9] Act of April 21, 1949, P.L. 665, *as amended*, 53 P.S. §§13101-13157.

[10] Section 17.1 of the Home Rule Act, added by the Act of November 30, 2004, P.L. 1523, states:

> In addition to any aggrieved person, the governing body vested with legislative powers under any charter adopted pursuant to this act shall have standing to appeal any decision of a zoning hearing board or other board or commission created to regulate development within the city. As used in this section, *the term "aggrieved person" does not include taxpayers of the city that are not detrimentally harmed by the decision of the zoning hearing board or other board or commission created to regulate development.*

53 P.S. §13131.1 (emphasis added).

*University of Pennsylvania*, 96 A. 123, 125 (Pa. 1915), our Supreme Court held that taxpayers have "the right to appeal to the courts" the City's alienation of property held in trust by the City. Accordingly, we reject the City's argument that the Home Rule Act's limitation on taxpayer standing in land use appeals applies with equal force where, as here, the issue is conservation of public art held in trust by the City, as opposed to a land development project.

Directive 67 provides another basis for Cedrone's and Mirarchi's standing. According to Mayor Kenney, the City owns "the largest public art collection of any American city." Removal Application at 6; R.R. 48a. Directive 67 requires public input on the removal of any public work of art, whether or not it involves a protest. Accordingly, "the Public Art Director shall hold or attend one community meeting or otherwise advise the affected community of the plan to remove the artwork and allow for public input[.]" Directive 67, §B.III.3. Further, the Public Art Director must consider the input and allow "*adjustments [] to the proposal based on the input received*[.]" Directive 67, §B.III.5 (emphasis added). Directive 67 recognizes the interest of the public in the art owned by the City, and it protects that interest. The mandates set forth in Directive 67 create the vehicle by which citizens and community groups can become involved in a decision of the City with respect to any work of public art.

Turning to Friends of Marconi Plaza, this "friends group" was formed approximately 10 years ago to "preserve and beautify the park," including "the Columbus statue[, which] is part of that park." N.T., 8/17/2020, at 65; R.R. 635a. Friends of Marconi Plaza has been recognized "by the Philadelphia Parks and Recreation as a friends group." N.T., 8/17/2020, at 66; R.R. 636a. It has beautified certain corners of the park by planting shrubs, renovating the playground, installing

17

new park benches and LED lights, and constructing bulletin boards to post events in the park. *Id.* Additionally, Friends of Marconi Plaza has hosted movie nights for children, spring concerts, and live theater shows, as well as participated in love your park days. Finally, Friends of Marconi Plaza participates in the annual October 12th celebration, which includes a parade and a festival in Marconi Plaza.

Based on the standing of its members, Cedrone and Mirarchi, Friends of Marconi Plaza has derivative standing. *Pennsylvania Medical Society v. Department of Public Welfare*, 39 A.3d 267, 278 (Pa. 2012) (association has standing if even one member is threatened with injury). Friends of Marconi Plaza, with over 1,500 members and recognition from the City's Department of Parks and Recreation, also has standing in its own right. *Society Hill*, 905 A.2d 579. As was the case for the association in *Society Hill*, Friends of Marconi Plaza preserves and beautifies the park, sponsors events at the park, and undertakes park improvement projects. Significantly, Friends of Marconi Plaza was directly involved in the litigation to stop the City from removing the Columbus statue without allowing, first, public input and participation. *Dowds*, 242 A.3d 683.

The City contends otherwise, directing the Court to *Spahn v. Zoning Board of Adjustment*, 977 A.2d 1132 (Pa. 2009). In *Spahn*, our Supreme Court consolidated three separate zoning appeals that challenged the grant of a billboard permit and the constitutionality of Section 17.1 of the Home Rule Act. The objectors included an individual, a community group, and several other civic organizations that challenged the grant of a variance for a 2,400-square-foot billboard. The associations' stated purpose was the enforcement of the zoning code anywhere in the City that billboards may be proposed. *Id.* at 1152. The Supreme Court held this interest was no different than the interest all citizens have in the enforcement of the

18

zoning code. Further, the associations could not establish derivative standing on the basis of a single member's residence over a mile away from the proposed billboard. More importantly, the associations could not show a particular or personal involvement with the area where the billboard would be erected. *See also Society Created to Reduce Urban Blight (SCRUB) v. Zoning Hearing Board of Adjustment of City of Philadelphia*, 951 A.2d 398 (Pa. Cmwlth. 2008) (association's stated mission of opposing illegal signs did not confer standing to challenge a billboard in its own right or derivative standing based on members who resided eight miles away from the billboard).

*Spahn* and *SCRUB* are distinguishable. First, *Spahn* expressly affirmed *Society Hill*, which found associational standing to exist because of the group's commitment to preservation in a specific neighborhood of the City. Likewise, here, Friends of Marconi Plaza has amply demonstrated a particular involvement in a specific city park. We reject the City's argument that the association's interest must be pinpointed to a single feature of the park, *i.e.*, the statue itself; Friends of Marconi Plaza's involvement in the preservation and beautification of the park includes the statues located therein. Second, this is not a land use appeal but, rather, a case about a public work of art that has been designated an "historic object" and is protected by numerous ordinance provisions. The limitation on taxpayer standing in Section 17.1 of the Home Rule Act does not apply to a public work of art. Directive 67 provides citizens an interest in works of art owned and maintained by the City's taxpayers and residents, which interest Objectors seek to preserve. Third, the individual members meet the traditional standing requirements because they live close to Marconi Plaza and participate in events there that directly involve the Columbus statue. These factors render *Spahn* and *SCRUB* inapposite and *Society Hill* and

19

*Dowds* controlling. Even assuming Section 17.1 of the Home Rule Act applies, here, Objectors have shown they are aggrieved.

We discern no error in the trial court's conclusion that Objectors, both as individuals and as an association, have standing. As the trial court stated, Objectors "have a substantial, direct, and immediate interest in the outcome of the litigation *sub judice* simply because removal will fundamentally impact the nature of [Marconi] Plaza, the various events[,] and the [s]tatue," in which they and other members participate. Trial Court Rule 1925(a) Opinion, 1/20/2022, at 11; R.R. 18a.

## II. Directive 67

Having determined that Objectors have standing, we turn to the City's contention that Directive 67 did not bar the Historical Commission's approval of the proposal to remove the Columbus statue. The City argues that Directive 67 constitutes a management policy for internal use; it is not a binding norm. Further, it argues that the trial court erred in not giving the City's construction of Directive 67 controlling weight.

The City's Home Rule Charter authorizes the City's acceptance of gifts and donations.[11] It further states that

> (1) *No work of art shall be acquired* by any department, board or commission, or erected or placed in or upon or allowed to extend

---

[11] The Home Rule Charter states, in pertinent part, as follows:

§ 8-204. Acceptance of Gifts or Donations.

Every department, board and commission, may accept on behalf of the City gifts or donations of money, securities, or other personal property which, or the income of which, shall be useful in connection with the work of such department, board or commission . . . .

PHILADELPHIA HOME RULE CHARTER, §8-204.

over any building, street, stream, lake, park, or other public place belonging to or under the control of the City, or *removed, relocated or altered in any way without approval first obtained from the Art Commission.*

(2) No construction or erection requiring the approval of the Art Commission shall be contracted for by any officer, department, board or commission without approval first obtained from the Art Commission.

(3) Nothing requiring the approval of the Art Commission shall be changed in design or location without its approval.

PHILADELPHIA HOME RULE CHARTER, §8-207 (emphasis added). Directive 67 implements the Home Rule Charter by establishing the procedures that must be followed by the City with respect to the donation, placement, and removal of public art owned by the City.

As noted above, Directive 67 requires the Office of Arts to solicit and obtain public input for a period of no less than 90 days before taking "further action" where a removal of public art is sought because of public protest. Directive 67, §B.III.2; R.R. 411a. Noting that the City failed to satisfy this and many requirements in Directive 67, the trial court concluded "that [the] entire removal process was initiated and controlled by the [] Mayor starting in June [] 2020" without regard to Directive 67. Trial Court Rule 1925(a) Opinion, 1/20/2022, at 22; R.R. 29a.

At the injunction hearing on June 15, 2020, the City's attorney stated the City's intention to follow Directive 67:

I am saying that the mayor is going to put out a statement that this is going to go through the Art Commission process, and that is going to be pursuant to the managing director's Directive 67, which there is a proposal that goes to the public Art Director . . . [t]hen it goes to the Art Commission. So that's the mayor's current posture.

21

N.T., 6/15/2020, at 32; S.R.R. 116b. Further, the City agreed, in a stipulation entered with Objectors on June 18, 2020, that

> 1. The Philadelphia Art Commission will determine the possible removal of the Columbus Statue . . . *through a public process as soon as practicable under the law*. Consistent with its prior plan, the City presently has no intention to and will not remove, damage, or alter the Statue, until such time as the Art Commission determines whether the Statue should be removed[.]
>
> 2. The parties shall continue to abide by all Philadelphia Home Rule Charter and all other applicable laws and regulations.

Stipulation and Order, 6/18/2020, at 1; S.R.R. 82b (emphasis added).[12]

The City contends that Directive 67 is "a non-binding managerial policy, not an officially[]promulgated regulation" and that "[t]he City was free to craft a special, fast-track procedure appropriate to the situation at hand." City Brief at 51. Objectors respond that Directive 67 implements City ordinances on public art and functions as a binding norm. Lest there be any doubt, the City pledged to follow Directive 67 in its court-approved stipulation, which made it binding in this particular case. We agree.

A management directive is one of several tools used to manage people employed by government. *Cutler v. State Civil Service Commission (Office of*

---

[12] Relying on a letter of the City's then-managing director dated July 22, 2020, the dissent believes that the City suspended Directive 67 with respect to the proposed removal of the Columbus statue. First, this purported suspension took place one week after the Mayor instructed Margot Berg, the City's Public Art Director, to initiate the public input process for the "possible removal of the statue." R.R. 48a. Second, in the court-approved stipulation, the City agreed to employ the procedures in Directive 67 with respect to the proposed removal of the Columbus statue. Third, as a binding norm, Directive 67 cannot be suspended arbitrarily whenever it suits the City. If the City wishes to provide exceptions to the requirements in Directive 67, it must amend Directive 67 to set forth the specific bases for the exceptions in order for a suspension, or exception, to be allowed.

22

*Administration)*, 924 A.2d 706, 711 (Pa. Cmwlth. 2007); *Sever v. Department of Environmental Resources*, 514 A.2d 656, 659 (Pa. Cmwlth. 1986). Generally, internal agency policies do not create enforceable rights. *Petsinger v. Department of Labor and Industry (Office of Vocational Rehabilitation)*, 988 A.2d 748, 757 (Pa. Cmwlth. 2010). However, a management directive that implements or supplements the constitution or a statute can create legally enforceable rights. *Id.* In this regard, the title "directive" is not dispositive of whether the rule or policy is limited to internal agency use. *See, e.g.*, *Newport Homes, Inc. v. Kassab*, 332 A.2d 568, 574-75 (Pa. Cmwlth. 1975) (although called a "final directive," the agency rule functioned as a regulation with the force and effect of law).

The City's Home Rule Charter provides that the "City shall have the power to enact *ordinances and make rules and regulations* necessary and proper for carrying into execution its powers; and such ordinances, rules and regulations may be made enforceable . . . ." PHILADELPHIA HOME RULE CHARTER §1-100 (emphasis added). The City's Charter creates a "Managing Director" to supervise "those departments whose heads the Managing Director appoints and the boards and commissions connected with such departments[,]" such as the Department of Parks and Recreation and the Office of Arts. PHILADELPHIA HOME RULE CHARTER §5-100. A City ordinance declares "as a matter of public policy that the *preservation and protection of buildings, structures, sites, objects*, and districts of historic, architectural, cultural, archaeological, educational, and aesthetic merit *are public necessities* and are in the *interests of the health, prosperity, and welfare of the people of Philadelphia*." PHILADELPHIA CODE §14-1001 (emphasis added).

Directive 67 constitutes a rule or regulation that supplements and implements the City's Charter, which prohibits any work of art belonging to the City

23

from being "removed, relocated[,] or altered" without approval of the Art Commission. PHILADELPHIA HOME RULE CHARTER §8-207(1). Directive 67 sets forth the criteria for an appropriate removal of public art from display and the procedures to be followed in any such removal. As such, Directive 67 does more than give the City's Managing Director a tool for disciplining employees in the Office of Arts. Directive 67 protects the public's interest in works of art, over which the City acts as trustee, by guaranteeing the public a voice in any removal or alteration of a public work of art.[13] The City's Home Rule Charter and Directive 67 are key elements of the City's stewardship of its vast public art collection. The mandates in Directive 67 implement the Home Rule Charter and City ordinances and, thus, have the force and effect of law.

The City argues, in the alternative, that even if Directive 67 is a binding norm, it does not apply to the Historical Commission but only to the Art Commission and the Office of Arts. The City invites this Court to affirm the Historical Commission's decision on the merits and, then, require "the City [to] implement Directive 67 before the next phase of the permitting process" should the Court conclude Directive 67 applies here. City Brief at 53, n.17. We reject the City's argument and its invitation.

First, Directive 67 states, explicitly, that the Office of Arts shall take no "*further action on the proposal*" to remove the Columbus statue "due to public

---

[13] The Environmental Rights Amendment to the Pennsylvania Constitution states:

> The people have a right to clean air [and] pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

PA. CONST. art. I, §27. This right of people "to the preservation of the . . . historic and esthetic values of the environment" includes municipal parks such as Marconi Plaza.

24

protest" until it has provided a "public input" process of "no less than ninety (90) days." Directive 67, §B.III.2; R.R. 411a (emphasis added). "Further action" includes the submission of an application to the Historical Commission. The Office of Arts violated Directive 67 by taking this "further action" before expiration of the 90-day period for public input. Likewise, the Office of Arts' application to the Art Commission for approval to remove the statue also violated the prohibition against "further action" in Directive 67. Neither the Historical Commission nor the Art Commission can act on an invalid application.

Second, we reject the City's suggestion that this Court can remedy the City's failure to follow Directive 67 by directing the mandatory public input period of 90 days to begin now, after the fact. The Office of Arts is required to consider the public input *before* it develops a plan for a work of public art that has been the target of public unrest. Further, the Public Art Director must consider that input and make "*adjustments [] to the proposal based on the input received.*" Directive 67, §B.III.5; R.R. 411a (emphasis added). Those adjustments might include alternatives, such as encasing the Columbus statue in plexiglass, or protecting the statue with video surveillance. There are many possibilities. The City's suggestion renders the 90-day opportunity for public comment illusory, depriving citizens of their ability and right to provide meaningful input to the Office of Arts. Further, it renders "adjustments" in response to public input an impossibility.

The Office of Arts' application to remove the Columbus statue from its current site before completion of the period for public input violated Directive 67. This cannot be remedied except by starting the public input period over and waiting until it is complete before the Office of Arts takes any further action with respect to

25

the removal of the Columbus statue from Marconi Plaza, such as the submission of a new application to the Historical Commission.

The application submitted by the Office of Arts to the Historical Commission violated Directive 67 and, thus, is a nullity. The Historical Commission lacked jurisdiction to receive the application submitted prior to completion of the 90-day period of public input, let alone to act upon that application.[14]

## Conclusion

For the foregoing reasons, we affirm the order of the trial court.

_____

MARY HANNAH LEAVITT, President Judge Emerita

Judge Ceisler and Judge Dumas did not participate in the decision of this case.

---

[14] Because we hold the Historical Commission lacked jurisdiction, we need not address the City's contention that the Historical Commission decision should be affirmed on the merits.

26

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re Appeal of: Friends of Marconi  :
Plaza and Rich Cedrone and        :
Joseph Q. Mirarchi              :
                                :
From a decision of: The City of  :      No. 938 C.D. 2021
Philadelphia Board of License  :
and Inspection Review       :
                                :
Appeal of: City of Philadelphia  :

# **O R D E R**

AND NOW, this 9th day of December, 2022, the August 17, 2021, order of the Philadelphia County Court of Common Pleas granting the appeal of Friends of Marconi Plaza, Rich Cedrone, and Joseph Q. Mirarchi and reversing the decision of the City of Philadelphia Board of License and Inspection Review is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re Appeal of: Friends of Marconi    :
Plaza and Rich Cedrone and           :
Joseph Q. Mirarchi                 :
                               : No. 938 C.D. 2021
From a decision of: The City of    : Argued: June 23, 2022
Philadelphia Board of License    :
and Inspection Review         :
                               :
Appeal of: City of Philadelphia   :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge


DISSENTING OPINION
BY JUDGE WOJCIK                         FILED: December 9, 2022

I dissent. The City of Philadelphia's (City) Managing Director suspended his Directive 67 prior to the proposal's submission herein to move the City's Christopher Columbus statue from Marconi Plaza. *See* Reproduced Record at 49a. As a result, it cannot provide a basis upon which the trial court below could reverse the City's administrative decisions authorizing the statue's removal in an appeal to that court from those decisions.

Accordingly, unlike the Majority, I would reverse the trial court's order in this matter.

                                                                 _____
                                                             MICHAEL H. WOJCIK, Judge