# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Brookview Solar I, LLC, | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | No. 1055 C.D. 2022 |
| | : | Argued: September 11, 2023 |
| | : | |
| Mount Joy Township Board of | : | |
| Supervisors, Tessa Amoss, | : | |
| Dwight Amoss, Travis Berwager, | : | |
| Michael Boccabello, Alan Bushbey, | : | |
| Tina Bushbey, Larry Combs, Barbara | : | |
| Combs, Ann DeGeorge, Nicholas | : | |
| Demas, Christine Demas, Thomas | : | |
| Dunchack, Sr., Thomas Dunchack, II, | : | |
| Glenda Gerrick, Larry Hartlaub, | : | |
| Curtis Hawkins, Sherry Hawkins, | : | |
| Kathleen Hegan, Joseph Hofmann, | : | |
| Philip Hunt, Amanda Martin, Justin | : | |
| Martin, Todd McCauslin, Angela | : | |
| McCauslin, Angelique Merkson, | : | |
| Stephen Merkson, Tom Newhart, | : | |
| Carol Newhart, Thea Phipps, Jennifer | : | |
| Ricketts, Steven Ricketts, Deborah | : | |
| Sanders, Scott Sanders, Suzanne | : | |
| Schust, Emily Shoey, Barbara Steele, | : | |
| Marilyn Truss, Larry Woltz, Peggy | : | |
| Woltz, David Yancosky, Richard | : | |
| Ogg, Patricia Ogg, Lawrence R. | : | |
| McLaren, Mary Ann Hartlaub, | : | |
| Clayton S. Wood, Corbin Wood, | : | |
| Steven E. Wood, Christine L. Wood, | : | |
| David R. Updyke and Kenneth A. | : | |
| Hilbert | : | |

BEFORE:  HONORABLE RENÉE COHN JUBELIRER, President Judge
    HONORABLE MICHAEL H. WOJCIK, Judge
    HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT                FILED:  November 30, 2023

Brookview Solar I, LLC (Brookview) appeals an order of the Court of Common Pleas of Adams County (trial court) that denied Brookview's conditional use application to construct a solar energy system in Mount Joy Township (Township), approximately 500 acres in size. On appeal, Brookview argues that the trial court erred in several ways. First, it erred in applying a *de novo*, rather than appellate, standard of review to the split decision of the Township's Board of Supervisors (Board). Second, it erred in holding that Brookview's site plan failed to address stormwater management, access roads, and open space requirements, which are matters to be addressed at the development phase of the project. Third, it erred in ruling Brookview's glare analysis report was inadmissible evidence. Fourth, it erred in burdening Brookview with proving that its proposed solar system would not be detrimental to the public welfare.

Concluding these claims lack merit, we affirm the trial court.

**Background**

Brookview[1] seeks to build a 75-megawatt photovoltaic solar energy generating facility over a site of 1,000 acres in the Township. The solar energy system will be sited on 21 privately-owned parcels, which have been either leased or purchased by Brookview. Approximately 374 acres to be used for the facility are located in the Township's Baltimore Pike Corridor, and the solar energy system will use approximately 160 of the 374 acres. Hearing Transcript (H.T.), 2/12/2020, at 53; Reproduced Record at 116a (R.R. __). The remainder of the land to be used in the system is located in the agricultural conservation zone, where a solar energy system is a use permitted by right. By contrast, a solar energy system is permitted only by conditional use in the Baltimore Pike Corridor.

---

[1] Brookview is a wholly-owned, indirect affiliate of NextEra Energy Resources, LLC (NextEra).

On November 12, 2019, Brookview submitted a conditional use application for a solar energy system in the Baltimore Pike Corridor. The application described the proposed solar energy system as follows:

> 1. Up to twelve (12) ft. tall, ground-mounted solar photovoltaic modules (single axis tracking).
>
> 2. Electrical inverters to convert the power from Direct Current (DC) to Alternating Current (AC).
>
> 3. A collection substation and utility-owned switchyard required to step-up the voltage to accommodate an interconnection into the electrical grid.
>
> 4. Underground collection lines to connect the panels to the accessory structures.
>
> 5. An eight (8) ft. tall security fence surrounding the facility as required by Section 11 of the National Electrical Safety Code (NESC).[2]
>
> 6. Safety lighting around the substation.

Initial Conditional Use Application at 2; R.R. 3751a. The application stated that the proposed solar energy system would comply with the required setback and landscaping provisions of the Mount Joy Township Zoning Ordinance of 2017, codified in the Code of the Township of Mount Joy, Chapter 110, Zoning (Zoning Ordinance).

The Township's Planning Commission recommended denial of Brookview's application "due to the large scope of the project." R.R. 4780a. The

---

[2] "The National Electrical Safety Code is an industry-wide code prepared under the auspices of the Bureau of Standards. It does not have the force of law but is voluntarily accepted as a minimum standard by the electrical industry." *Poorbaugh v. Pennsylvania Public Utility Commission*, 666 A.2d 744, 745 n.3 (Pa. Cmwlth. 1995).

Planning Commission noted that it had not been provided any of the exhibits attached to Brookview's application.

Between January 2020 and March 2021, the Board held 21 public hearings on Brookview's conditional use application.[3]   Forty-four individuals (Objectors) opposed Brookview's application, and six individuals (Intervenors)[4] supported Brookview's application.  Both Objectors and Intervenors were granted party status by the Board.

Brookview and Objectors presented testimonial[5] and documentary evidence.  Additionally, the Board received testimony and exhibits from several self-represented citizens as well as unsworn written and oral public comments from 68 citizens.

At the conclusion of the hearings, the Board considered two motions on Brookview's conditional use application.  One motion was offered to approve the application with conditions, and the other was offered to deny the application.  The

---

[3] A conditional use falls within the jurisdiction of the municipal governing body rather than a zoning hearing board. *In re Thompson*, 896 A.2d 659, 670 (Pa. Cmwlth. 2006).

[4] Intervenors are Clayton S. Wood, Corbin Wood, Steven E. Wood, Christine L. Wood, David R. Updyke, and Kenneth A. Hilbert.

[5] On behalf of Brookview, the following individuals testified: Chanelle Mayer, project manager for Google Development at NextEra; Paul Callahan, director of the engineering and construction division at NextEra; Neal Beasley, a senior project manager in the landscape architecture group at Timmons Group; Edward (Ted) McGavran, a senior project manager at Timmons Group; Dan Jamison, a senior project engineer in the energy renewable group at Timmons Group; Andrew Lines, a partner at the accounting firm of CohnReznick; Clayton Wood, owner of property in Mount Joy Township and dairy sales leader for the East Coast at Cargill Animal Nutrition; Heather Sexton, an employee at SWCA Environmental Consultants; and Heath Barefoot, project director at NextEra.

On behalf of Objectors, the following individuals testified: Mark Heckman, Lawrence Lahr, Herbert Eckerlin, Dwight Amoss, Joseph Hoffman, Nicholas Demas, Travis Berwager, Emily Shoey, Barbara Steele, Scott Sanders, Deborah Sanders, Todd McCauslin, Angela McCauslin, Glenda Gerrick, Lawrence Combs, Thomas Newhart, and Dr. Phillip Hunt.

4

vote tied.[6]  As a result, the application was denied by operation of law. Subsequently, the Board provided the parties with written notice of the application's denial.  The notice included, as attachments, unsigned "draft written decisions in support of each motion."  R.R. 4546a.

Brookview appealed to the trial court.

## Trial Court Decision

Before the trial court, the parties stipulated that those factual findings that appeared in the two draft decisions presented to the Board members could be considered by the trial court as adopted by the Board.  The parties also agreed that the trial court's review of the Board's decision should be limited to abuse of discretion or error of law, *i.e.*, an appellate standard of review.

The trial court rejected the stipulation, holding that the Board did not make any findings of fact.  The trial court explained that neither of the two draft decisions had been adopted by the Board; each was unsigned.  Further, the Board's minutes recorded that the motion to approve the application was accompanied by a draft decision, but they did not record that the motion to deny the application was similarly accompanied by a draft decision.  Simply, none of the findings in either draft decision could be factually or legally construed as having been adopted by a majority of the Board.  As a consequence, the trial court concluded that "statutory law directs that the common pleas court 'shall make its own findings of fact based on the record below . . . .'"  Trial Court Op., 1/12/2022, at 23; R.R. 4638a (quoting

---

[6] The Board is comprised of five members.  However, one supervisor recused himself and did not attend the hearings.  Thus, Brookview's conditional use application was considered by the four remaining Board members.

5

Section 1005-A of the Pennsylvania Municipalities Planning Code (MPC),[7] 53 P.S. §11005-A). The trial court also reasoned that the parties, by stipulation, could not determine the trial court's standard of review, which was a matter committed to the trial court by statute.

Because the parties informed the court that they did not wish to present any additional evidence, the trial court conducted a *de novo* review of the record that was made before the Board. The trial court reached several conclusions and findings that are relevant to this appeal:

> 3. Section 301 of the Zoning Ordinance identifies "solar energy systems" as a conditional use in the [Baltimore Pike Corridor].
>
> 4. Zoning Ordinance Section 1201 sets forth the criteria governing the filing and consideration of conditional use applications.
>
> 5. Zoning Ordinance Section 402.11 identifies specific requirements applicable to the development of a "solar energy system."
>
> . . . .
>
> 21. Brookview's application includes as an attachment a glare analysis prepared by Capitol Airspace Group.
>
> 22. Although the glare study indicates "[t]here is no predicted glare for residences . . . [or] along the routes for cars," Brookview did not present the author of the report or any expert testimony on the subject.
>
> . . . .
>
> 30. The amended site plan submitted by Brookview identifies points of access to the several lots but does not identify the dimensions or precise location of the interior travel aisles. Engineered details of the access drives necessary to determine

---

[7] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §11005-A. The text of Section 1005-A of the MPC is set forth in the text of the opinion, *infra*.

compliance with Chapter 86 of the Township Code[8] (relating to subdivision and land development) have not been provided. Applicant's Exhibit 16; June 24, 2020 Tr., pg. 110.

. . . .

39. There is no evidence of record that the Project complies with the dimensional requirements for the [Baltimore Pike Corridor] related to open space (20 percent) as required in [Zoning] Ordinance Section 302(a).

40. The record lacks credible evidence concerning maximum lot coverage (50 percent) as required by [Zoning] Ordinance Section 302(a).

41. Brookview has failed to offer credible evidence related to the internal circulation of access roads.

. . . .

44. Except as otherwise set forth herein, Brookview's Project complies with [Zoning] Ordinance requirements related generally to all uses within the [Baltimore Pike Corridor] and the Zoning Ordinance generally.

45. Brookview's application complies with the filing requirements set forth in Section 1201A(1) of the Zoning Ordinance except as otherwise set forth hereinabove.

. . . .

48. The purpose of the [Baltimore Pike Corridor] "is to take advantage of the corridor's historic function as a major thoroughfare and to continue the established mixed use and intensive development pattern along the corridor, subject to appropriate siting and design controls that foster the continued efficiency of [the Baltimore Pike] as a major corridor, enhance the appearance of land use along [the Baltimore Pike], protect and preserve the historic features along [the Baltimore Pike], and minimize adverse impacts of non-residential uses on residential uses." [Zoning] Ordinance Section 205.

---

[8] The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§65101-68701.

49. Brookview has failed to demonstrate by credible evidence that the proposed use is consistent with the purposes and intent of the [Zoning] Ordinance's description of the [Baltimore Pike Corridor]. The proposed Project will monopolize approximately 10 percent of the acreage in the district for a single use.

50. Brookview has failed to prove by credible evidence that the proposed use will not detract from the use and enjoyment of adjacent or nearby lots, substantially change the character of the neighborhood, or adversely affect property values.

Trial Court Op., 9/2/2022, at 4-11. In short, the trial court found Brookview's application for a conditional use satisfactory in some respects and unsatisfactory in others.

Initially, the trial court addressed Objectors' challenge to the admissibility of Brookview's glare analysis report, which measured the impact of the proposed solar energy system on pilots, vehicles, and residents. Brookview's report was attached to its conditional use application, but it did not present an expert to testify at the Board hearing about the report's analysis and conclusions. Objectors asserted that without Brookview's proffer of the expert who authored the report, they could not conduct cross-examination, a right guaranteed by Section 908(5) of the MPC, 53 P.S. §10908(5).[9] Brookview countered that the glare analysis is a procedural requirement of the application and not a substantive requirement. Accordingly, it did not need to present a glare analysis expert at the hearing to explain the report.

The trial court was not persuaded by Brookview's argument. It began with the Zoning Ordinance, which provides that a permit application for a solar energy system shall include:

---

[9] It states: "[t]he parties shall have the right to be represented by counsel and shall be afforded the opportunity to respond and present evidence and argument and cross-examine adverse witnesses on all relevant issues." Section 908(5) of the MPC, 53 P.S. §10908(5).

Glare analysis demonstrating, through siting or mitigation measures, that any glare produced by the solar energy system will not have an adverse impact.

ZONING ORDINANCE §110-402(II)(2)(b). The trial court concluded that this language established a substantive requirement, *i.e.*, that the applicant must demonstrate that by "siting or other mitigation," its proposed energy system will not generate glare that will have an adverse impact. *Id.* The trial court reasoned that the term "demonstrating" made it clear that the expert's "conclusion [must] be credibly supported by evidence." Trial Court Op., 9/2/2022, at 14.

Brookview's glare analysis report, attached to its application, was identified as Brookview Exhibit 1 at the Board hearing of January 15, 2020. At a subsequent hearing, the only person to testify about the report was Brookview's senior manager, who stated that the report "found no impact." H.T., 2/12/2020, at 81-82; R.R. 144a-45a. Objectors objected to the admission of the glare analysis report for the stated reason that without any expert testimony, they could not conduct cross-examination on the report's methodology. The Board did not rule on the objection; however, the Board's solicitor recommended that the objection be overruled because "the Application [was] submitted to the Township, and all of its parts were properly identified as an exhibit." H.T., 8/27/2020, at 149; R.R. 1043a.

In its *de novo* review, the trial court ruled the glare analysis report inadmissible. Notwithstanding the report's identification as an exhibit attached to the application, the trial court held that this did not constitute an admission of the report for probative evidentiary value. Without any demonstration of the report's authenticity or reliability, it did not satisfy even the most lenient standard of evidence. Because the height of the solar panels examined in the analysis was not the height of the panels Brookview intended to install, the report could not support

9

a finding that Brookview met its burden of proving that the glare from the project would "not have an adverse impact," even if it were admitted. ZONING ORDINANCE §110-402(II)(2)(b). For that reason alone, the trial court held Brookview did not qualify for a conditional use. Trial Court Op., 9/2/2022, at 26-27.

As to burden of proof and persuasion, the trial court acknowledged that generally an objector bears the burden of proving an adverse impact on public welfare where a conditional use meets the objective criteria. However, in this case, Article 12 of the Zoning Ordinance placed the burden of proof on public welfare considerations upon the applicant. ZONING ORDINANCE §§110-1201-110-1205; R.R. 4316a-21a.

Turning to Brookview's site plan, the trial court identified several deficiencies. These related to stormwater management; access drive and interior travel aisles; and maximum lot coverage.

As to stormwater management, Brookview claimed that it had to demonstrate only a substantial likelihood that it would meet that requirement in future proceedings. While generally accurate, the Zoning Ordinance requires the applicant's site plan to demonstrate actual compliance with Chapter 81, Stormwater Management, of the Zoning Ordinance. ZONING ORDINANCE §110-402(II)(2)(a)[3]. Accordingly, the trial court rejected Brookview's argument that it had to show only a "substantial likelihood" of compliance with stormwater management.

In the alternative, Brookview argued that even if the Zoning Ordinance did require a stormwater management plan to be submitted with the application, the acceptance of the application by the Township's Zoning Officer excused its noncompliance. The trial court also rejected that argument, explaining that the

10

Zoning Officer lacked authority to waive provisions of the Zoning Ordinance. Section 614 of the MPC provides, in relevant part, as follows:

> The zoning officer shall administer the zoning ordinance in accordance with its literal terms, and shall not have the power to permit any construction or any use or change of use which does not conform to the zoning ordinance.

53 P.S. §10614.

As to the project's access drives and interior travel aisles, Brookview's engineer testified that the access roads on the site plan were tentative because "[t]he access roads are a function of the layouts. The layout cannot really be determined until the actual panel is selected." H.T., 8/27/2020, at 26; R.R. 919a. The trial court concluded that a "tentative" plan did not comply with the Zoning Ordinance. *See* ZONING ORDINANCE §110-402(II)(6); R.R. 4241a.[10]

As to the open space requirement for a conditional use, the trial court found the record devoid of evidence on the open space on the parcels to be developed with Brookview's solar energy system. The Zoning Ordinance sets standards for the

---

[10] It states:

> An access drive meeting the requirements of Chapter 86 (Subdivision and Land Development) of the Code of the Township of Mount Joy shall be provided. The interior of the solar energy system shall be improved with interior travel aisles sufficient in location, dimension and construction to allow access by maintenance vehicles and emergency management vehicles.

ZONING ORDINANCE §110-402(II)(6); R.R. 4241a.

11

minimum open space[11] percentage (20%) and maximum lot coverage[12] percentage (50%) for parcels in the Baltimore Pike Corridor. ZONING ORDINANCE §110-302(a); R.R. 4001a. Brookview offered testimony on the maximum lot coverage, but the trial court did not credit this testimony because it was based upon a hypothetical solar panel size and not the actual size, which was still unknown. Even Brookview's senior project engineer acknowledged the likelihood that the lot coverage ratio of the project would change in the future.

Finally, as to the public welfare standards, the trial court noted that Brookview's solar energy system would use approximately 10% of the land in the Baltimore Pike Corridor. This conflicted with the intent of the Zoning Ordinance to continue the mixed use established in that district. ZONING ORDINANCE §110-205;[13]

---

[11] Open space is defined as:

> Any area of land or water, or a combination of land and water, within a development site that is free of improvement. Open spaces may include required setbacks, utility easements where the utility facilities are located underground, and streets, access drives, driveways and stormwater management facilities where there is a necessity to locate these features in the open space and where such features cross the open space in a perpendicular manner.

ZONING ORDINANCE §110-111(B); R.R. 4183a.

[12] Lot coverage is defined as:

> A percentage of the lot area covered with structures, including any portion of a structure elevated above grade, except above-ground swimming pools and playground equipment, and impervious area as defined in this chapter.

ZONING ORDINANCE §110-111(B); R.R. 4178a.

[13] It provides, in relevant part:

> The purpose of the [Baltimore Pike Corridor District] is to take advantage of the corridor's historic function as a major thoroughfare and to continue the established mixed use and intensive development pattern along the corridor, subject to appropriate siting and design controls that foster the continued efficiency of State Road 97 as a major corridor, enhance the appearance of land use along State Road 97, protect and preserve the historic features along State Road 97, and minimize adverse impacts of non-residential uses on residential uses.

ZONING ORDINANCE §110-205; R.R. 3998a.

R.R. 3998a. Because Brookview could not identify any specifics on the solar panels to be used, it was impossible for the trial court to determine whether they would place the health and safety of neighboring residents at risk.

For all these reasons, the trial court affirmed the Board's denial of Brookview's application for conditional use.

Brookview appealed the trial court's decision.

## Appeal

On appeal,[14] Brookview raises four issues.[15] First, it argues that the trial court erred in reviewing the Board's decision *de novo*. Second, it argues that the trial court erred in holding that Brookview did not satisfy the specific and objective requirements set forth in the Zoning Ordinance for a conditional use. Third, it argues that the trial court erred in ruling that Brookview's glare analysis report was inadmissible. Fourth, it argues that the trial court erred in holding that Brookview had the burden of proof and persuasion with regard to the impact of its proposed solar energy system on the public welfare and that it did not meet this burden. We address these issues *seriatim*.

---

[14] In a case where the trial court takes no additional evidence, but makes its own findings based on the record before the board, we review the trial court's decision. *Koutrakos v. Zoning Hearing Board of Newtown Township, Delaware County*, 685 A.2d 639, 642 (Pa. Cmwlth. 1996). *See also Gryshuk v. Kolb*, 685 A.2d 629, 633 (Pa. Cmwlth. 1996) (trial court is the factfinder when the board has not made findings). Our standard of review is whether the trial court committed an abuse of discretion or an error of law. *Faulkner v. Board of Adjustment of Moosic Borough*, 624 A.2d 677, 679 (Pa. Cmwlth. 1993). We may conclude that the trial court abused its discretion only if its findings were not supported by substantial evidence, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 640 (Pa. 1983).

[15] For purposes of this opinion, we have rearranged Brookview's issues on appeal.

13

**Applicable Principles**

The law on conditional uses is well established. A conditional use is defined as "[a] use permitted in a particular zoning district pursuant to the provisions in Article VI" of the MPC. *See* Section 107(a) of the MPC, 53 P.S. §10107(a). A governing body has authority to grant a conditional use "pursuant to express standards and criteria set forth in the zoning ordinance." Section 603(c)(2) of the MPC, 53 P.S. §10603(c)(2). A conditional use involves the use of the land, as opposed to the particular design details of the development. *Joseph v. North Whitehall Township Board of Supervisors*, 16 A.3d 1209, 1215 (Pa. Cmwlth. 2011). An applicant is entitled to a conditional use as a matter of right, unless it is determined "that the use does not satisfy the specific, objective criteria in the zoning ordinance for that conditional use." *In re Drumore Crossings, L.P.*, 984 A.2d 589, 595 (Pa. Cmwlth. 2009).

The applicant bears the burden of establishing that the proposed conditional use satisfies the specific criteria in the zoning ordinance. *Id.* The board is the factfinder, with the responsibility for credibility determinations and the weight to be assigned the evidence. *Joseph*, 16 A.3d at 1218. If the board is persuaded that the application complies with the zoning ordinance, a presumption arises that "the proposed use is consistent with the general welfare of the community." *H.E. Rohrer, Inc. v. Zoning Hearing Board of Jackson Township*, 808 A.2d 1014, 1018 (Pa. Cmwlth. 2002). A conditional use evidences a legislative determination that the use will not have an adverse impact on the public interest in normal circumstances. *In re Cutler Group, Inc.*, 880 A.2d 39, 42 (Pa. Cmwlth. 2005).

The burden then "shifts to [the] objectors to rebut the presumption by proving that there is a high degree of probability the proposed use will adversely

14

affect the welfare of the community in a way not normally expected from the type of use." *H.E. Rohrer, Inc.*, 808 A.2d at 1018. "Mere speculation" of possible harm is not sufficient, and the objectors' burden may not be satisfied with personal opinion or bald assertions. *Id.* Pointedly, a "conditional use application *must* be granted unless the objectors present sufficient evidence that the proposed use has a detrimental effect on the public health, safety and welfare." *In re McGlynn*, 974 A.2d 525, 537 (Pa. Cmwlth. 2009) (emphasis added).

With these principles in mind, we turn to Brookview's issues on appeal.

**Analysis**

**I. Trial Court's Standard of Review**

Brookview argues that the trial court erred in reviewing the record *de novo*.[16] It contends the trial court should have applied an appellate standard of review to the Board's denial of its conditional use application because the Board considered two draft decisions, each containing many of the same findings of fact and conclusions of law.[17] It contends that the findings of fact common to each draft decision constitute actual findings of the Board.

---

[16] In its brief, Brookview focused much of its argument on challenging the trial court's *de novo* review. At argument, however, Brookview focused on its reliance on the Zoning Officer's assurance that certain items in its conditional use application could be addressed later on during the zoning permitting process.

[17] Brookview argues that the findings in the two draft opinions differed at paragraphs 24, 26, 49, 69, 71-75, and 78. R.R. 4611a-12a. Brookview contends that the entirety of the Board voted in favor of paragraphs 1-23, 25, 27-48, 50-68, 70, and 76-77. Likewise, Brookview argues that the Board voted in favor of the majority of the conclusions of law, with minor exceptions, in paragraphs 3 and 6. Thus, the entire Board voted in favor of paragraphs 1, 2, 4-5, and 7-9.

However, the record does not confirm that a draft decision in support of the motion to deny the application was even presented to the entire Board, let alone voted on.

The MPC requires a written determination within 45 days of the last hearing. Section 908(9) of the MPC, 53 P.S. §10908(9). It further provides as follows:

> Where the application is contested or denied, each decision shall be accompanied by findings of fact and conclusions based thereon together with the reasons therefor.

*Id*. Where the record does not include findings and conclusions, the MPC requires the trial court to make them. Section 1005-A of the MPC states, in pertinent part, as follows:

> If the record below includes findings of fact made by the governing body, board or agency whose decision or action is brought up for review and the court does not take additional evidence or appoint a referee to take additional evidence, the findings of the governing body, board or agency shall not be disturbed by the court if supported by substantial evidence. *If the record does not include findings of fact* or if additional evidence is taken by the court or by a referee, *the court shall make its own findings of fact based on the record below as supplemented by the additional evidence, if any*.

53 P.S. §11005-A (emphasis added).

> At the June 3, 2021, meeting, the Board recorded the following votes:
>
> Mr. [Jeff] Patterson moved, seconded by Mr. [John] Gormont, that, based on the findings of fact and conclusions of law, the [Board] [] approve the application for a conditional use for a solar energy use as described in the Application and at public hearing, subject to the following conditions[.]
>
> . . . .
>
> Chairman Gormont and Supervisor Patterson voted yes, Supervisors [Bernie] Mazer and [Terry] Scholle voted no. Mr. Mazer moved, seconded by Mr. Scholle[,] to deny the application. Supervisors Mazer and Scholle voted yes, Chairman Gormont and Supervisor Patterson voted no.

16

Board Meeting Minutes, 6/3/2021, at 3; https://mtjoytwp.us/wp-content/uploads/12.-June-3-2021-Workshop-Meeting-Minutes.pdf (last visited November 30, 2023). As a result of the Board's tie vote, Brookview's application was denied by operation of law.

On June 7, 2021, the Board solicitor provided the parties a written notice of the application's denial, attaching two unsigned versions of a document titled, "Decision of the Mount Joy Board of Supervisors." The notice stated that one draft was prepared in support of the motion to approve the application, and the other was prepared in support of the motion to deny the application. They were provided "for information." R.R. 4546a.

Although the drafts share some common factual findings, none was formally adopted by a majority of the Board. Section 906(a) of the MPC states that "[f]or the conduct of any hearing and the taking of any action, a quorum shall be not less than a majority of all the members of the board[.]" 53 P.S. §10906(a). Here, there was an equally divided vote and two unsigned "drafts" of factual findings. Further, the above-quoted minutes from the meeting do not record that the motion to deny the application was accompanied by a draft decision, as was the motion to approve. In any case, each motion received two votes. Simply, there was no majority on a single factual finding.

In *Pham v. Upper Merion Township Zoning Hearing Board*, 113 A.3d 879 (Pa. Cmwlth. 2015), this Court considered whether a zoning board's split decision should be given an appellate, or *de novo*, review by the trial court. At issue was an application for a variance to use property as a bed and breakfast in a single-family zoning district. Following a hearing, the zoning board voted two in favor and two in opposition, which constituted a denial of the variance. Nevertheless, the

17

zoning board issued a unanimous 32-paragraph decision, with 25 findings of fact and 7 conclusions of law. The trial court affirmed the zoning board's decision, and the landowners appealed to this Court. They asserted that the trial court erred in not applying a *de novo* standard of review to the zoning board decision.

This Court held that because the board can act only by a majority of its members, a tie vote requires that "the subject[]matter with which it is dealing must remain in status quo." *Id*. at 888. Nevertheless, because the zoning board had issued a written decision that was signed by all four members, we held that the zoning board's decision was adequate for purposes of an appellate review. The concurrence of then-Judge Brobson, now Justice Brobson, did not agree that the written decision was suitable for appellate review because the so-called findings of fact were, in actuality, mere summaries of the evidence. *Pham*, 113 A.3d at 894. As such, findings of fact under Section 1005-A of the MPC were required. Notwithstanding the trial court's claim to have applied an appellate standard of review, in actuality, it did a *de novo* review. For that reason, the concurrence joined in the panel's order to affirm.

Brookview likens the instant matter to *Pham*, arguing that the Board issued a decision that contained findings of fact and conclusions of law, upon which all the board members agreed. Brookview Brief at 18. We disagree. In *Pham*, all four board members formally adopted the findings of fact, such as they were. By contrast, here, neither of the two draft decisions was signed; neither represents a majority of the Board.

In the absence of findings from the Board, the trial court concluded that it had to make its own findings under Section 1005-A of the MPC, 53 P.S. §11005-A. We agree. It was appropriate, and necessary, for the trial court to do so. *See*

18

*also Faulkner*, 624 A.2d 677 (common pleas court is the factfinder when reviewing a zoning board's deemed approval, which normally implies an absence of board findings). We reject Brookview's contrary argument.

Likewise, we are not persuaded by Brookview's argument that the parties' stipulation should have determined the trial court's standard of review. Standard of review refers to the manner in which (or "how") that examination is conducted. *Morrison v. Department of Public Welfare, Office of Mental Health (Woodville State Hospital)*, 646 A.2d 565, 570 (Pa. 1994). Parties may limit the issues available for the court's consideration, but "the parties cannot stipulate to matters affecting the jurisdiction, business, or convenience of the courts." *Northbrook Life Insurance Company v. Commonwealth*, 949 A.2d 333, 337 (Pa. 2008) (citations omitted). It goes without saying that parties cannot instruct the trial court to overlook or disregard the terms of the MPC.

Given the tie vote and the lack of a majority vote on any findings of fact, the trial court correctly determined that its standard of review was *de novo*.

## II. Site Plan Deficiencies

## A. Completeness of Application

Brookview asserts that the trial court erred in affirming the Board's denial of a conditional use for the stated reason that its site plan was deficient. Brookview contends that it was not required to submit detailed engineering plans on stormwater management, lot coverage, open space, and access roads with its application. These items, Brookview argues, will be addressed at a later phase in the permit process. Indeed, the Township informed Brookview that, at this stage, it need only show that "the proposed use demonstrates a substantial likelihood of

19

compliance with the requirements" of the Zoning Ordinance. Brookview Brief at 27 (citing ZONING ORDINANCE §110-1201(B)(6); R.R. 4317a).

Conditional use applications involve the proposed use of the land and not the particular design of the proposed development. *See Schatz v. New Britain Township Zoning Hearing Board of Adjustment*, 596 A.2d 294, 298 (Pa. Cmwlth. 1991). The level of evidence needed to obtain conditional use approval will be determined on a case-by-case basis, and it will vary depending on the language of the applicable ordinance. *In re Thompson*, 896 A.2d at 670.

In *Schatz*, this Court held that a zoning hearing board could not reject an application for a special exception[18] for the stated reason that it did not address sewage capacity, stormwater management, or water supply requirements. We explained that "such issues are to be addressed further along in the permitting and approval process." *Schatz*, 596 A.2d at 298. In *In re Brickstone Realty Corporation*, 789 A.2d 333, 339 (Pa. Cmwlth. 2001), we held that detailed design information, such as a floor plan, was not relevant to a special exception application under the relevant zoning ordinance. On the other hand, in *East Manchester Township Zoning Hearing Board v. Dallmeyer*, 609 A.2d 604 (Pa. Cmwlth. 1992), we held that water supply and sewage plans had to be addressed in a special exception application because the applicable zoning ordinance required that submission. Stated otherwise, the parameters of a conditional use application are determined by the terms of the particular zoning ordinance.

---

[18] The law on conditional uses and special exceptions is virtually identical. *In re Thompson*, 896 A.2d at 670. A conditional use proceeding follows the procedures applied in a special exception proceeding. *Sluciak v. Cecil Township Board of Supervisors*, 223 A.3d 725, 730 (Pa. Cmwlth. 2019).

20

Brookview argues that the Zoning Officer advised Brookview that its application was complete and that the specific conditional use provisions in the Zoning Ordinance had either been satisfied or did not need to be addressed at this stage of the permitting process. Relying on *Nextel Partners, Inc. v. Clarks Summit Borough/Clarks Summit Borough Council*, 958 A.2d 587 (Pa. Cmwlth. 2008), Brookview argues that the Board and the trial court were bound by the Zoning Officer's determination that its site plan was complete.

In *Nextel*, the zoning ordinance required the zoning officer to "refuse to accept an incomplete application which does not provide sufficient information to determine compliance with this [o]rdinance." *Nextel*, 958 A.2d at 592. Nevertheless, the borough council accepted the application along with the $600 application fee. We interpreted this action as acceptance of a completed form because the borough council "had an obligation under its [o]rdinance to refuse to accept" an incomplete application. *Id.* at 593-94. Once the application was accepted, the clock began running on the deadline for holding a hearing on the application.

Brookview's reliance on *Nextel* is misplaced. *Nextel* concerned the calculation of the 60-day deadline for scheduling a hearing on a conditional use application under Section 908(1.2) of the MPC, 53 P.S. §10908(1.2).[19] This case does not concern the timeliness of the Board's hearing on Brookview's application. Even so, the ordinance in *Nextel* was unlike the Zoning Ordinance here, which allows, but does not mandate, the Zoning Officer to reject an incomplete application.

---

[19] Under Section 913.2(b)(2) of the MPC, which was added to the MPC by the Act of December 21, 1988, P.L. 1329, where the governing body fails to "commence, conduct or complete the required hearing as provided in section 908(1.2), the decision shall be deemed to have been rendered in favor of the applicant . . . ." 53 P.S. §10913.2(b)(2).

21

It states, in relevant part, that a "*failure to comply with the requirements of this section may lead to the rejection of the application*" by the Zoning Officer. ZONING ORDINANCE §110-1203(A); R.R. 4320a (emphasis added). In any case, *Nextel*, 958 A.2d at 593, also established that acceptance of a conditional use application does not constitute a determination that it complies with the technical requirements of the ordinance.

Under the Zoning Ordinance, only the Board can act upon an application for conditional use. ZONING ORDINANCE §110-1201(B) ("The Board of Supervisors shall hear and act upon an application for conditional use as specifically authorized by this chapter."). It is for the Board to determine whether the applicant has, by credible evidence, satisfied the substantive criteria in the Zoning Ordinance for a conditional use. That the Zoning Officer did not identify any site plan deficiencies, R.R. 4422a-23a, 4337a-46a, is irrelevant. That did not bind the Board, or the trial court, in review of the "technical requirements" applicable to the proposed conditional use. *Nextel*, 958 A.2d at 594.

Brookview next argues that *Nextel* established that a municipality has a duty of good faith "in reviewing and processing development plans." Brookview Brief at 42 (quoting *Nextel*, 958 A.2d at 593). Brookview relied on the Township's assurance that its application complied with the Zoning Ordinance. Indeed, before the trial court, the Township took the position that there were no deficiencies in Brookview's site plan. Brookview contends that the Township's change of position requires this Court to remand the application to the Board of Supervisors.

Before the trial court, the Township cited the two unsigned draft decisions as the basis for its position that the site plan was complete. However, as explained *supra*, because neither draft decision was formally adopted by a majority

22

of the Board, the Township's position (at that time) lacked any foundation in the evidentiary record.

It is true that a "municipality has a duty to process and review a land use application in good faith." *Grace Building Company, Inc. v. Richland Township Board of Supervisors* (Pa. Cmwlth., No. 1111 C.D. 2009, filed April 15, 2010) (unreported), slip op. at 3.[20] This includes "providing an applicant a reasonable opportunity to respond to objections or to modify plans where there has been a misunderstanding or difference of opinion." *Raum v. Board of Supervisors of Tredyffrin Township*, 370 A.2d 777, 798 (Pa. Cmwlth. 1976). When a municipality "receives an incomplete application that precludes meaningful review, it should act clearly and without delay." *Nextel*, 958 A.2d at 593. Further, after "application acceptance, technical requirements and interpretations may be addressed collaboratively as ordinance compliance is assessed." *Id*. at 594.

Given the vote of the Board, we do not accept Brookview's premise that there was a misunderstanding or difference of opinion between the Township and Brookview about the site plan. In any case, Objectors asserted, before the Board, that the site plan was deficient as to a glare analysis, stormwater management plan, and access roads. That position continued in the appeal. Once the trial court determined that it would conduct a *de novo* review of the record in this matter, all the parties had the opportunity to introduce additional evidence. Trial Court Op., 1/12/2022, at 23; R.R. 4638a. Brookview should have used that opportunity to present evidence relevant to its site plan.[21]

---

[20] An unreported panel decision of this Court, "issued after January 15, 2008," may be cited "for its persuasive value[.]" Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

[21] In its brief filed in the trial court, Brookview stated that the original site plan submitted with the application was revised during the hearings to address comments from the Township and Planning

We reject Brookview's request that this Court remand the matter to the Board so that Brookview can amend its original conditional use application with a new site plan. It had that opportunity before the trial court and chose not to use it.

### B. Stormwater Management Plan

Conditional uses must adhere to requirements specified in the Zoning Ordinance, which states, in relevant part, as follows:

> The applicant for a conditional use shall demonstrate, by credible evidence, compliance with these criteria and those criteria specified elsewhere in this chapter for the use in question:
>
> > (6) *The proposed use demonstrates a substantial likelihood of compliance* with the requirements of this chapter.

ZONING ORDINANCE §110-1201(B)(6); R.R. 4317a (emphasis added). Notwithstanding this general requirement, the Zoning Ordinance established a specific standard for stormwater management of a proposed solar energy system. It states as follows:

> (2) Application for a zoning permit for the solar energy system shall include:
>
> > (a) A site plan:
>
> . . . .
>
> > > [3] *Demonstrating compliance with Chapter 81*, Stormwater Management, of the Code of the Township of Mount Joy.

ZONING ORDINANCE §110-402(II)(2)(a)[3]; R.R. 4240a (emphasis added).

---

Commission. Brookview Trial Court Brief at 21; Original Record (O.R.), Item No. 92 at 21. Notably, Brookview did not request the trial court to order a remand so it could further revise its site plan. To the contrary, Brookview advised the trial court "there is no need for any remand to the Board." Brookview Trial Court Brief at 65; O.R., Item No. 92 at 65.

24

The trial court held that Brookview did not meet its burden of "demonstrating" compliance with Section 402(II)(2)(a)[3] of the Zoning Ordinance. Brookview argues that under Section 1201(B)(6), it was required to demonstrate merely "a substantial likelihood" that it will satisfy this requirement. ZONING ORDINANCE §110-1201(B)(6); R.R. 4317a. Future proceedings before the Township and state agencies will oversee permits needed for the project. The trial court rejected this argument because Brookview's application did not even address stormwater management, let alone demonstrate a substantial likelihood of compliance with stormwater management requirements.[22] Trial Court Op., 9/2/2022, at 6, Finding of Fact (F.F.) No. 20.

Brookview argues the Zoning Officer's acceptance of the application excused Brookview's failure to include a stormwater management with its site plan. The Zoning Ordinance provides:

> No application shall be deemed filed unless and until the applicable fee is paid, the related form is properly completed, all informational requirements set forth in this chapter have been satisfied, and all necessary signatures are applied. Any failure to comply with the requirements of this section may lead to the rejection of the application or appeal because it is [sic] administratively incomplete by the Zoning Officer.

---

[22] At the hearing, Brookview's witness, Dan Jamison, an engineer overseeing development of renewable energy sites, testified:

Q. So, turning back to the Zoning Officer's letter dated January 14 which is Exhibit 12, Item 4 mentions a requirement demonstrating compliance with stormwater management.

What has that compliance shown or done?

A. That compliance will be completed before building permits can be issued.

H.T., 6/24/2020, at 81; R.R. 633a.

25

ZONING ORDINANCE §110-1203(A); R.R. 4320a.  Simply, the Zoning Officer's acceptance of an application does not determine the technical merits of the site plan. *Nextel*, 958 A.2d at 594.

Brookview also asserts that it could not address all the stormwater management requirements because its solar energy system is at the preliminary planning stage.  Brookview's engineer, however, testified during cross-examination that "it is possible to do a preliminary storm[]water plan that would demonstrate the location of facilities on the property[.]"  H.T., 8/27/2020, at 43-44; R.R. 936a-37a. He explained, however, that it was "too speculative to be able to provide detail as to stormwater" at this stage.  H.T., 8/27/2020, at 36; R.R. 929a.

By not addressing stormwater management, Brookview's application did not satisfy a specific conditional use requirement in Section 402(II)(2)(a)[3] of the Zoning Ordinance.  Accordingly, the trial court did not err in determining that Brookview's application was properly denied.

### C. Dimensional Requirements

Brookview argues that the trial court erred in holding that it did not satisfy the open space and maximum lot coverage requirements of the Zoning Ordinance.  It contends that it provided "testimony and evidence to establish its compliance," and it relied on the Zoning Officer's acceptance of its application. Brookview Brief at 48.

The Zoning Ordinance requires a site plan to "[d]emonstrat[e] compliance with requirements of this section and all other applicable requirements of this chapter, including, but not limited to, *the requirements of the zoning district in which located*, parking, landscaping and signage[.]"  ZONING ORDINANCE §110-402(II)(2)(a)[2]; R.R. 4240a (emphasis added).  The ordinance sets forth the

26

minimum open space percentage and maximum lot coverage percentage for parcels in the Baltimore Pike Corridor at 20% and 50% respectively. ZONING CODE §110-302(A); R.R. 4193a.

The trial court found the record devoid of any discussion on the open space on the parcels to be developed with Brookview's solar energy system. Although Brookview presented evidence on maximum lot coverage, the trial court did not credit this evidence because it was based upon a hypothetical solar panel size; Brookview has not yet chosen the actual solar panel size. Brookview conceded the fact that the size of the solar panel will change the lot-coverage ratio but claimed that compliance with the Zoning Ordinance will be determined "at the time of final site plan[.]" H.T., 8/27/2020, at 64; R.R. 957a.

The Zoning Ordinance placed the burden on Brookview to prove at the hearing its substantial compliance with the open space requirements for a solar energy system in order to be granted a conditional use. It did not meet this burden, and we discern no error by the trial court.

### D. Access Road and Interior Travel Aisles

Brookview argues that it complied with the Zoning Ordinance requirements to identify an access drive and interior travel aisles because its site plan included general information on access roads. The Zoning Ordinance provides as follows:

> An access drive meeting the requirements of Chapter 86 (Subdivision and Land Development) of the Code of the Township of Mount Joy shall be provided. The interior of the solar energy system shall be improved with interior travel aisles sufficient in location, dimension and construction to allow access by maintenance vehicles and emergency management vehicles.

27

ZONING ORDINANCE §110-402(II)(6); R.R. 4241a. However, the trial court found that Brookview's site plan did not identify the precise location of access roads and did not "offer credible evidence related to the internal circulation of access roads." Trial Court Op., 9/2/2022, at 9, F.F. No. 41. Accordingly, Brookview did not satisfy this specific criterion in the Zoning Ordinance.

Brookview claims, again, that it relied on the Zoning Officer whose assurance delayed production of this information. As explained, the Zoning Officer lacked authority to waive any provision of the Zoning Ordinance, which expressly requires that information on access roads and interior travel aisles be provided in the conditional use application. ZONING ORDINANCE §110-402(II)(6); R.R. 4241a. Brookview did not meet this requirement.

Brookview acted at its peril by ignoring the express requirement in the Zoning Ordinance that an applicant for a conditional use identify the access drive and interior travel aisles. We discern no error by the trial court.

### III. Admissibility of Glare Analysis Report

Brookview next argues that the trial court erred in ruling the glare analysis report attached to its conditional use application was inadmissible as evidence. Brookview argues that its glare analysis report fully satisfied the Zoning Ordinance, obviating the need to present a witness at the hearing. Brookview Brief at 50.

With respect to glare, Section 402(II)(2)(b) of the Zoning Ordinance states, in pertinent part, as follows:

> (2) Application for a zoning permit for the solar energy system shall include:
>
> . . . .

28

(b)    Glare analysis *demonstrating*, through siting or mitigation measures, that any glare produced by the solar energy system will not have an adverse impact.

ZONING ORDINANCE §110-402(II)(2)(b); R.R. 4240a (emphasis added).    This provision requires an applicant to (1) include a glare analysis with its application for conditional use and (2) demonstrate that "any glare produced by the solar energy system will not have an adverse impact." *Id*.   Whether the applicant makes that demonstration is a matter for the Board to determine.

Brookview believes that so long as the conditional use application includes a glare analysis stating, "any glare produced by the solar energy system will not have an adverse impact," the applicant has fully satisfied Section 402(II)(2)(b) of the Zoning Ordinance.   However, the terms of a zoning ordinance must be applied as written, and inconvenient words cannot be omitted. *Greth Development Group, Inc. v. Zoning Hearing Board of Lower Heidelberg Township*, 918 A.2d 181, 187 (Pa. Cmwlth. 2007).   We agree with the trial court that the Zoning Ordinance imposed a substantive burden on Brookview to prove that its siting or mitigation measures will prevent "an adverse impact."

Objectors challenged the admissibility of the glare analysis report at the Board hearing because they were not allowed the opportunity to cross-examine the author on the analysis or the methodology used to reach the conclusions of the report. In land use hearings, "[t]he parties . . . shall be afforded the opportunity to respond and present evidence and argument and cross-examine adverse witnesses on all relevant issues."  Section 908(5) of the MPC, 53 P.S. §10908(5).

Evidence at land use hearings is addressed in the MPC, which provides that the "[f]ormal rules of evidence shall not apply, but irrelevant, immaterial, or unduly repetitious evidence may be excluded."  Section 908(6) of the MPC, 53 P.S.

29

§10908(6). Hearsay can be admissible in such a hearing, *Town & Country Management Corporation v. Zoning Hearing Board of Borough of Emmaus*, 671 A.2d 790, 792 (Pa. Cmwlth. 1996), but the hearsay evidence "must be sufficiently corroborated by other evidence in order to be considered competent evidence." *Lake Adventure Community Association, Inc. v. Dingman Township Zoning Hearing Board*, 79 A.3d 708, 714 n.4 (Pa. Cmwlth. 2013). In the seminal case *Walker v. Unemployment Compensation Board of Review*, 367 A.2d 366, 370 (Pa. Cmwlth. 1976), this Court held that hearsay evidence admitted without objection can be given its natural probative effect and may support a finding of fact if corroborated by competent evidence in the record.

Brookview did not authenticate the glare analysis report. There was no testimony on the substance of the analysis or the methodology used to reach the report's conclusions. There was no effort by Brookview to show how, or if, other evidence in the record corroborated the conclusion in the glare analysis report that there would be no adverse impact. Finally, Brookview's decision not to present expert testimony denied Objectors the opportunity to conduct meaningful cross-examination, as required by the MPC. *See* Section 908(5) of the MPC, 53 P.S. §10908(5).

We discern no error in the trial court's ruling that Brookview's glare analysis report was inadmissible.

### IV. Burden of Proof and Persuasion on Impact to Public

Finally, Brookview argues that the trial court erred by placing the burden of persuasion on Brookview, instead of Objectors, on the issue of whether its proposed solar energy system will have an adverse impact on the general welfare of the community. Brookview contends that "[O]bjectors have the initial evidence

presentation duty with respect to the general matter of detriment to health, safety and general welfare, even if the ordinance has expressly placed the persuasion burden upon the applicant, where it remains if detriment is identified." Brookview Brief at 53 (quoting *Bray v. Zoning Board of Adjustment*, 410 A.2d 909, 912 (Pa. Cmwlth. 1980)). Brookview argues that Objectors had to show a high degree of probability that the proposed solar facility will adversely affect the health and safety of the community, and they did not make this case.

In *Butler v. Derr Flooring Company*, 285 A.2d 538 (Pa. Cmwlth. 1971), we concluded that the zoning ordinance may place the burden of proof onto the applicant, explaining as follows:

> Once an applicant has met the burden of proving his compliance with all of the specific conditions and requirements of the zoning ordinance, he has met his initial burden of proof. *If the protestants to the issuance of a special exception raise specific issues concerning health, safety and general welfare, then the burden would continue to be with the applicant.* The applicant would be required to come forward to meet the objections so as to show that the intended use would not violate the health, safety and general welfare of the community with relation to such objections. It would then be the duty of the [b]oard in the exercise of its discretionary power to determine whether or not the applicant had met his burden of proof.

*Id.* at 542 (emphasis added). This was consistent with the township's zoning ordinance, which stated that "the burden shall be upon the applicant to prove that approval for the application will not be detrimental to the health, safety, and general welfare of the community." *Id.*

In *Bray*, 410 A.2d at 913, this Court reaffirmed the presentation and persuasion obligations of each party in the context of an application for special

31

exception. Regarding the general criterion of detrimental effect upon the health, safety, and welfare of the neighborhood, we held that

> [the o]bjectors have both the duty and the burden; the ordinance terms can place the burden on the applicant but cannot shift the duty.

*Id.*

In sum, where the zoning ordinance places the burden of proof on the applicant to demonstrate that the requested conditional use will not detrimentally affect the health, safety, and general welfare of the community, then "the applicant has the initial burden to produce evidence, and also to prove, that its proposed use meets all of the specifications and requirements provided by the [] zoning code for the grant of a conditional use." *EQT Production Company v. Borough of Jefferson Hills*, 208 A.3d 1010, 1023 n.10 (Pa. 2019). "At that point, the objectors have a burden to produce evidence showing that the proposed development would have a detrimental effect on the health, safety, and welfare of the community." *Id.* "If the objectors produce such evidence, the applicant must then prove 'that the intended use would not violate the health, safety, and general welfare of the community with relation to such objections.'" *Id.* (quoting *Butler*, 285 A.2d at 542; *Bray*, 410 A.2d at 912).

> Here, the Zoning Ordinance provides as follows:
>
> For uses permitted by conditional use, [Article 4 of the Zoning Ordinance] sets forth specific requirements and standards which must be satisfied. *The applicant shall have the burden of proof that the proposed use meets all applicable requirements and standards contained within this Ordinance including those specific to the use, applicable to conditional uses generally, applicable generally to all uses within the relevant zoning district, and applicable generally to all uses*.

32

ZONING ORDINANCE §110-401(C); R.R. 4002a-03a (emphasis added). As to the general criteria, the Zoning Ordinance states, in pertinent part, as follows:

> The applicant for a conditional use shall demonstrate, by credible evidence, compliance with these criteria and those criteria specified elsewhere in [Chapter 110] for the use in question:
>
> . . . .
>
> > (3) *The proposed use will not substantially change* the character of the subject lot's neighborhood nor adversely affect the character of the general neighborhood, the conservation of property values, *the health and safety of residents or workers on adjacent lots and in the neighborhood*, nor the reasonable use of neighboring lots. The use of adjacent lots shall be adequately safeguarded.

ZONING ORDINANCE §110-1201(B)(3); R.R. 4317a (emphasis added). In sum, the Zoning Ordinance places the burden on the applicant to demonstrate that the proposed use will not substantially change the character of the lots used by a solar energy system or adversely affect the character of the neighborhood or the reasonable use of neighboring lots.

At the hearing before the Board, Objectors came forward with evidence on the detriment to the health, safety, and welfare of the community. Their witnesses testified about existing water runoff onto their properties and contamination of water supply. They also testified about the inadequate buffering of the solar panels, the visibility of which would adversely impact the enjoyment of their property. Their evidence addressed adverse impacts upon ecosystems and wildlife caused by the solar panels. They presented expert evidence on how Brookview's solar energy system would affect property values.

33

Brookview and Intervenors complain that Objectors' proffered evidence was not sufficiently discussed by the trial court. They also argue that Objectors' evidence did not meet the "high probability standard" of *Bray*, 410 A.2d 909.

The trial court found this inquiry unnecessary. Given the site plan deficiencies, including the absence of a credible glare analysis, the trial court held it was impossible to find that "the health and safety of residents or workers on adjacent lots and in the neighborhood" would be adequately safeguarded. ZONING ORDINANCE §110-1201(B)(3). We discern no error in the trial court's holding.

### Conclusion

For the reasons set forth herein, we affirm the decision of the trial court.

_____
MARY HANNAH LEAVITT, President Judge Emerita

34

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brookview Solar I, LLC,  :
    Appellant   :
          :
  v.        :  No. 1055 C.D. 2022
          :
Mount Joy Township Board of :
Supervisors, Tessa Amoss,  :
Dwight Amoss, Travis Berwager, :
Michael Boccabello, Alan Bushbey, :
Tina Bushbey, Larry Combs, Barbara :
Combs, Ann DeGeorge, Nicholas :
Demas, Christine Demas, Thomas :
Dunchack, Sr., Thomas Dunchack, II, :
Glenda Gerrick, Larry Hartlaub, :
Curtis Hawkins, Sherry Hawkins, :
Kathleen Hegan, Joseph Hofmann, :
Philip Hunt, Amanda Martin, Justin :
Martin, Todd McCauslin, Angela :
McCauslin, Angelique Merkson, :
Stephen Merkson, Tom Newhart, :
Carol Newhart, Thea Phipps, Jennifer :
Ricketts, Steven Ricketts, Deborah :
Sanders, Scott Sanders, Suzanne :
Schust, Emily Shoey, Barbara Steele, :
Marilyn Truss, Larry Woltz, Peggy :
Woltz, David Yancosky, Richard :
Ogg, Patricia Ogg, Lawrence R. :
McLaren, Mary Ann Hartlaub, :
Clayton S. Wood, Corbin Wood, :
Steven E. Wood, Christine L. Wood, :
David R. Updyke and Kenneth A. :
Hilbert       :

## ORDER

    AND NOW, this 30th day of November, 2023, the September 2, 2022, order of the Court of Common Pleas of Adams County is AFFIRMED.


       _____
       MARY HANNAH LEAVITT, President Judge Emerita